**Raymond LANDRY, Petitioner-Appellant,**

v.

**STATE OF ALABAMA,**
**Respondent-Appellee.**

**No. 77–2536**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Sept. 1, 1978.

Raymond Landry, pro se.

J. B. Sessions, III, Mobile, Ala. (Court-appointed), for petitioner-appellant.

William J. Baxley, Atty. Gen., David W. Clark, Asst. Atty. Gen., Montgomery, Ala., for respondent-appellee.

Before MORGAN, CLARK and TJOFLAT, Circuit Judges.

CHARLES CLARK, Circuit Judge:

The appellant, Raymond Landry, seeks habeas corpus relief from confinement resulting from his Alabama state court conviction by jury verdict of second degree murder. In his pro se petition, which was submitted to this court as his brief on appeal, Landry contends that he was deprived of various constitutional rights since (i) he received more punishment than did a codefendant who pleaded guilty, (ii) a witness who was shown a suggestive pretrial lineup was allowed to identify him at trial as one of several persons present at the scene of the homicide, and (iii) the state withheld

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

evidence which would have been of assistance to him at trial. The district court, without holding a hearing, denied relief. This court directed that counsel be appointed to represent Landry on appeal, and Landry's supplemental brief filed by his appointed counsel expands the withholding of evidence issue. We affirm the district court's denial of the writ.

The facts of this case are set out in the reported opinion affirming Landry's conviction on direct appeal, *Landry v. State*, 321 So.2d 759 (Ala.Cr.App.1975), and we will not repeat them in detail here. Briefly, Landry and four companions drove from New Orleans to Mobile on August 4, 1974, to obtain narcotics. While they were using narcotics at a Mobile apartment occupied by a man named Freeman and a woman named Madison, Leroy Malone, the seller of the drugs, appeared on the scene and was shot and killed in the presence of Landry and his four companions. Landry and his friends immediately left the apartment, and they were stopped and arrested by the police shortly thereafter. The arresting officers noticed that Landry was sitting in the car "with his hands behind his back shuffling." Upon inspection of the car seat where Landry had been sitting, the officers found the gun that fired the shot that killed Malone.

Landry and his four companions all were indicted for first degree murder for the killing of Malone. One was convicted of first degree murder and was sentenced to life imprisonment, three (including Landry) were convicted of second degree murder and were sentenced to twenty, twenty, and twenty-one years, and one pleaded guilty to first degree manslaughter and was sentenced to five years.

■ We agree with the district court that there is no merit in Landry's claim that his conviction and sentencing are invalid because he received more punishment than did a codefendant who pleaded guilty. Under Alabama law all persons concerned with the commission of a felony are punishable as principals, Ala.Code Tit. 14, § 14, and Landry's sentence of twenty years is within the statutory maximum for second degree murder. Ala.Code Tit. 14, § 318. Assuming Landry's codefendant received a substantially lesser sentence as the immediate result of plea bargaining does not advance Landry's claim. Our power is limited to a consideration of the facts and circumstances of Landry's case and background. These factors do not disclose anything illegal or unfair, so clearly there was no constitutional defect. Landry is not entitled to benefit in his trial from his codefendant's decision to plead guilty.

■ Landry's argument that he was subjected to an unconstitutionally suggestive lineup also must fail. Cheryl Madison, one of the occupants of the apartment that Landry and his friends were using, testified at trial that Landry was one of the five men at the apartment about the time of the murder. On voir dire examination outside the presence of the jury, defense counsel brought out that Madison went to the police station to view a lineup shortly after the homicide. The lineup consisted of eight persons, five of whom were the codefendants in this case, and apparently the officer conducting the lineup pointed out these five men to Madison while she was viewing the lineup. The trial judge admitted Madison's in-court identification of Landry and refused to require the state to prove that this identification was not tainted by the suggestive lineup.

The due process standard against which police identification procedures are to be measured has developed into a bipartite inquiry in this circuit. As a threshold inquiry, the court must decide whether the identification procedure was unnecessarily suggestive. If so, the court then must determine whether such a procedure created a substantial risk of misidentification. *Allen v. Estelle*, 568 F.2d 1108, 1111–12 (5th Cir. 1978). Reliability of the identification is the linchpin in determining whether the due process standard of fairness has been met, *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), and the factors to be considered in determining reliability are those set out in *Neil v. Biggers*, 409 U.S.

188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). There the Supreme Court stated:

. . . [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

409 U.S. at 199, 93 S.Ct. at 382. Only if the suggestive identification procedure considered in the light of these factors creates a "very substantial likelihood of irreparable misidentification" are an accused's due process rights violated. *See Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

The district court applied this bipartite standard and concluded that although the identification procedure was suggestive, it did not create a substantial risk of misidentification. Although he considered the five factors set forth in *Biggers,* he made a finding on only one of those factors and rested his decision on his finding that Madison had ample opportunity to view the defendant at the place of the crime about the time of the crime. From the record we can discern that Madison must have paid some attention to Landry's appearance when she saw him at the time of the crime, for she identified him by the nickname by which he was known to his companions. In addition, the record reveals that the lineup was conducted the day after the crime was committed, so the period of elapsed time between the crime and the confrontation was short.

We conclude that the totality of the circumstances surrounding this lineup supports the district court's holding that there was no substantial likelihood that Madison misidentified Landry as one of those present at her apartment about the time of the homicide. Though there is no evidence in this record regarding two of the *Biggers* factors—the accuracy of any prior descriptions of Landry by Madison or the level of certainty exhibited by Madison at the con-

frontation procedure—there is no requirement that positive findings be made on all five factors before a court can find that there is not substantial likelihood of misidentification. Indeed, in *Biggers* there was a seven-month lapse between the crime and the confrontation, but the Supreme Court held that the other positive factors outweighed this negative factor and justified a finding of no substantial likelihood of misidentification. The court below was not required to make a positive or negative finding on all five factors; it was required only to assess those factors present in this case and give them the weight they deserved under a totality of the circumstances approach. We agree with the district court that this record reveals no substantial likelihood of irreparable misidentification.

Alternatively, even if admitting Madison's identification testimony was error, we agree with the district judge that the error was harmless beyond a reasonable doubt. Robert Brown was with Landry and his companions for several hours on the day of the murder, and he identified Landry at trial as being at Madison's apartment about the time of the crime. Melvin Sartain, one of Landry's four companions, also placed Landry at the apartment about the time of the crime. This testimony and the testimony concerning the circumstances surrounding Landry's arrest renders any error in admitting Madison's identification of Landry harmless beyond a reasonable doubt.

▆▆▆ Turning to the withholding of evidence question, we agree with the district court that there was no error in the state's failure to provide Landry with a police report made by Captain Stallings for use in cross-examining Trooper Reed, and we also agree that the state's failure to produce a toxicological report before trial did not constitute constitutional error. There remains to be considered, however, the argument made by appointed counsel that the state violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose to Landry that an eyewitness to the murder identified one other than Landry as the person who killed Malone. A

police report reveals that James Phillips, a friend of Malone's, identified Gissander Wright, one of Landry's four companions, as the person who shot Malone.

Counsel's argument is that the theory of the prosecution's case was that Landry did the shooting, and that therefore the evidence that an eyewitness identified someone else as the triggerman would have been material to punishment if not to guilt itself. *See Brady v. Maryland,* 373 U.S. at 87, 83 S.Ct. at 1196–97. Nothing in the record before the district court, which includes the transcript of Landry's entire trial except for argument of counsel, indicates that the state attempted to prove that Landry was the triggerman. Nevertheless, counsel attempts to support his argument by attaching an affidavit to his brief to this court in which Landry's trial counsel states that he remembers that the prosecution suggested in closing argument that Landry did the shooting since Landry was caught attempting to hide the murder weapon at the time of his arrest.

The state denies that it attempted to prove that Landry did the actual killing, but rather contends that it sought to prove that Landry was one of the group that killed Malone in a common venture, thereby making Landry a principal under Alabama law. In addition, the state contends that the report counsel now contends is *Brady* material was given to Landry's trial counsel during the cross-examination of Captain Stallings. Although the record shows that defense counsel was given a police report at that time, we cannot discern from the record before us and the district court whether that is the same report now claimed to have been withheld.

We decline appointed counsel's invitation to engage in appellate fact finding and to grant relief on the basis of factual allegations and arguments not presented to the district court. *See, e. g., Anderson v. Texas,* 507 F.2d 105 (5th Cir. 1975). The district court's denial of the writ was correct based on the evidence before him, and we affirm his action on this appeal.

AFFIRMED.