**Wesley SELLERS, Petitioner-Appellant,**

v.

**W. J. ESTELLE, Etc., Respondent-Appellee.**

No. 80–1037.

United States Court of Appeals, Fifth Circuit. Unit A

July 27, 1981.

Rehearing Denied Sept. 17, 1981.

Michael Maness, Houston, Tex., for petitioner-appellant.

Charles A. Sharman, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before BROWN and TATE, Circuit Judges and SMITH *, District Judge.

---

* District Judge of the Northern District of Mississippi, sitting by designation. Judge Orma R. Smith was a member of the panel that heard oral arguments but due to illness did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. 46(d).

TATE, Circuit Judge:

Petitioner Wesley Sellers, a Texas state prisoner, appeals from a district court judgment[1] in which his application for writ of habeas corpus was denied. Sellers alleges that certain evidence (police offense reports) favorable to him was withheld by the prosecution during his state court trial for murder which could have had an effect on his conviction and/or sentence. We agree with the petitioner Sellers that if he did not have the opportunity to review the allegedly withheld (but favorable) police offense reports, it constituted a violation of his due process rights. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). However, because it is ambiguous from the state court records whether or not these reports were furnished to the petitioner for use at his murder trial, we must remand to the district court below for an evidentiary hearing on this issue. If the district court concludes at that hearing that the petitioner did not receive them, then Sellers's conviction is to be vacated and the writ of habeas corpus shall issue unless the petitioner is retried within a reasonable period of time.

*Facts*

The petitioner Sellers was arrested in the early morning hours on November 26, 1969, at the Hamilton Junior High School in Houston, Texas. Officers Kenneth Wayne Moody and R. R. Dietrich of the Houston Police Department had gone to the school in response to a silent burglar alarm which had been triggered. After arriving at the school, they started to conduct an investigation, shots were fired, and Officer Moody was fatally wounded.

Shortly thereafter, other officers arrived and, in their search of the premises, apprehended the petitioner Sellers, who himself had been shot and was apparently hiding in an upstairs classroom.

Sellers was subsequently indicted by a Texas Grand Jury (Petitioner's Ex. 17a, p. 2) for the killing of Officer Moody. This was a capital offense. After a jury trial, he was found guilty, and the jury fixed his sentence at life imprisonment (i. e., instead of sentencing him to death, or to imprisonment for a lesser term of years, as was within the discretion of the jury). His conviction was upheld on direct appeal. *Sellers v. State*, 492 S.W.2d 265 (Tex.Cr.App.1973).

After unsuccessfully seeking state habeas corpus relief (Record p. 205), Sellers filed for habeas relief in federal district court. The basis of Sellers's application was that certain offense reports prepared by members of the Houston Police Department were withheld from him at the time of his trial for murder, in violation of his due process rights.[2] *Brady v. Maryland, supra.* Specifically, the offense reports allegedly suppressed revealed that: (1) Santos Cantera "orally admitted his part in this offense" (Petitioner's Ex. 1); (2) Santos Cantera made his admission of guilt to the police after he was implicated in the murder by three friends—Alfredo Valenzuela, Albert Santos and Amos Santos (Alfredo and Amos both told police that Cantera had admitted to each of them that he had killed the officer at Hamilton Jr. High School) (Petitioner's Ex. 1); (3) Santos Cantera had been charged with the burglary of another school on Sept. 9, 1969, less than 3 months before the offense in question (Petitioner's Ex. 1); and (4) Santos Cantera was charged with aggravated assault on a police officer on August 5, 1969, approximately 4 months before the murder at the junior high (Petitioner's Ex. 4).

After an "evidentiary hearing" on Sellers's petition (at which the state was required to produce its file), the matter was submitted on the basis of the police and state judicial records. In recommending denial of the petitioner's application, the

1. Sellers's petition was heard before a United States Magistrate, whose findings and conclusions of law were adopted by the United States District Court. (Rec. p. 210)

2. At the evidentiary hearing held before the Magistrate, Sellers also asserted that the prosecution withheld other evidence (blood tests, photographs, etc.) in addition to the offense reports implicating another individual in Moody's murder. On appeal, however, Sellers only challenges the alleged impermissible suppression of offense reports favorable to him.

Magistrate failed, however, to make a definitive ruling on whether or not the offense reports above cited were actually suppressed at trial. Nevertheless, the Magistrate concluded that, even if the reports were suppressed, Sellers "failed to carry his burden in this case, that is, to demonstrate facts that establish a constitutional violation." (Record p. 207).

In recommending denial of Sellers's petition for writ of habeas corpus, the Magistrate found that Cantera's oral statement was "*inculpatory* in that it place[d] Petitioner at the scene voluntarily,"[3] (Record p. 200); that the allegedly suppressed evidence was not material "in any constitutional sense" (Record p. 200), and that "Cantera's statements would have been inadmissible" under art. 38.22, Tex.Code Cr.P.,[4] and Valenzuela's written statement (implicating Cantera) inadmissible as hearsay. (Record p. 201).

After a thorough review of the record before us, we find that Sellers demonstrated sufficient facts to establish a constitutional violation.

## I

■ In *Brady v. Maryland, supra*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution, 373 U.S. at 87, 83 S.Ct. at 1196. In establishing a *Brady* violation, a defendant must prove: "(1) the prosecution's suppression of evidence, (2) the favorable character of the suppressed evidence for the defense; (3) the materiality of the suppressed evidence." *United States v. Sink*, 586 F.2d 1041, 1051 (5th Cir. 1978), cert. den., 443 U.S. 912, 99 S.Ct. 3102, 61 L.Ed.2d 876 (1979).

We pretermit for the moment discussion of the prosecution's alleged suppression of the police offense reports. See part II, infra.

*Favorable Character of Evidence*

The Magistrate concluded that the offense reports allegedly suppressed were not favorable to Sellers because they were inculpatory. As the Magistrate correctly noted, the offense reports were inculpatory to the extent that they placed the petitioner Sellers voluntarily at Hamilton Junior High School on the night that Officer Moody was killed. However, these reports were clearly

---

**3.** As part of his defense presented at his trial for murder, Sellers contended that he was kidnapped by 3 masked men on the night the school was broken into and Officer Moody killed. He recognized the voice of one to be that of Leonard Minor, a personal enemy of his. Sellers contends that he was brought to the school by these individuals, knocked unconscious, and consequently framed by them (when he was discovered by the police on the second floor) for the burglary of the school and the murder of Officer Moody.

**4.** Article 38.22 of the Texas Code of Criminal Procedure reads in pertinent part:

Sec. 3. (a) An oral statement of an accused made as a result of custodial interrogation is admissible against the accused in a criminal proceeding for the purpose of impeachment only and when:

(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

(2) prior to the statement but during the recording the accused is told that a recording is being made;

(3) prior to the statement but during the recording the accused is given a warning in

Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

(4) the recording device was capable of making an accurate recording, that the operator was competent, and that the recording is accurate and has not been altered;

(5) the statement is witnessed by at least two persons; and

(6) all voices on the recording are identified.

(b) Every electronic recording of any statement made by an accused during custodial interrogation must be preserved until its destruction is permitted by order of a district court of this state.

(c) Subsection (a) of this section shall not apply to any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed.

*exculpatory* in that they indicated that another individual, Santos Cantera, not only was at the school that night, but admitted to others that he was the one who shot Officer Moody. (Petitioner's Ex. 1). Additionally, Seller's defense counsel was not afforded the opportunity to further develop the "kidnap theory" presented by the petitioner in light of this newly discovered, and partially exculpatory, evidence.

■ We find, then, that the suppressed reports were favorable to the petitioner with respect to the determination of his guilt. A fortiori, this suppressed evidence was even more favorable to the petitioner with regard to his punishment. *Brady v. Maryland, supra.* The trial court instructed the jurors that "the punishment for murder with malice aforethought shall be by death or by confinement in the Texas Department of Corrections for life or *for a term of years not less than two.*" (Petitioner's Ex. 17a, p. 37) (Emphasis added). It is not inconceivable that, had the jury been made aware of this additional evidence (implicating Cantera with Officer Moody's murder), Sellers (even if found guilty of murder as a co-defendant, but not as the actual "triggerman") might have received a lesser sentence.

*Materiality of Suppressed Evidence*

The Supreme Court in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), recognized three types of situations in which the *Brady* doctrine is applicable: (1) Those cases in which the prosecution has knowingly used false or perjured testimony—reversal required "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. at 103, 96 S.Ct. at 2397; (2) Those cases in which the defense made a specific request for a particular item that was not disclosed—reversal is required if the suppressed evidence might have affected the outcome of the trial. *United States v. Agurs*, 427 U.S. at 104, 96 S.Ct. at 2398; and (3) Those cases in which the defense made only a general request or in which the state does not volunteer information in its possession that might be of an exculpatory nature—reversal is required only if the suppressed evidence "creates a reasonable doubt that did not otherwise exist.... If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." *United States v. Agurs*, 427 U.S. at 112–13, 96 S.Ct. at 2402.[5]

■ In the case before us, we find that the defense specifically requested the prosecution to produce "the offense reports and any other written statements" dealing with this case. (Petitioner's Ex. 17a, pp. 73–74). The petitioner could not have been more specific absent express knowledge of Cantera's, Valenzuela's and the Santos Brothers' reports. Accordingly, reversal is required if the suppressed evidence might have affected the outcome of the trial. Having already concluded that this evidence was favorable, we find that the suppressed evidence satisfies this threshold of materiality, both with respect to the petitioner's guilt and to his punishment.[6]

## II

The final *Brady* requirement that we must address is the suppression issue—were

---

**5.** A fourth situation was recognized by this court in *Garrison v. Maggio*, 540 F.2d 1271 (5th Cir. 1976), cert. den., 431 U.S. 940, 97 S.Ct. 2655, 53 L.Ed.2d 258 (1977). There, the court held that "an even stricter standard of materiality, one requiring petitioner to demonstrate that the new evidence probably would have resulted in an acquittal, is appropriate before a new trial must be granted for the nondisclosure of purely impeaching evidence." Id. at 1274.

**6.** In addressing the issue of materiality, the Magistrate found that Cantera's oral statements and Valenzuela's written statement would have been inadmissible, hence these reports were immaterial. (Record pp. 200–01). Such a conclusion is unwarranted. First, by enabling the defense to examine these reports, Sellers may have been able to produce witnesses whose testimony or written statements may have been admissible. *Martinez v. Wainwright*, 621 F.2d 184 (5th Cir. 1980). Second, the evidence here suppressed was material to the preparation of petitioner's defense, regardless of whether it was intended to be admitted into evidence or not.

the police offense reports relating to Cantera withheld (either intentionally or not) from the petitioner. The conflicting statements made by the Magistrate in his findings and conclusions of law leave us confused as to whether he made a specific finding of fact on this issue:

> The Petitioner was supplied at his State-Court trial only with that portion of the offense report which had been made by officers Smith and Langford. The "supplemental offense report" reflecting the "admissions" and proceedings involving Santos Cantera was apparently made by Officers Cashmere, McNutt, Brandan, Massey and Bland; *it was never produced.* (Record p. 198). [Italics supplied.]

> From the state appeal record and trial transcript before the Magistrate, it is impossible to determine whether this supplemental report was included in those reports given to defense counsel following testimony by Homicide Officers Smith and Langford. (Record p. 199).

> The Magistrate here will not speculate what statements or lab reports were contained in Officer Smith and Officer Langford's reports, even though they were the chief homicide investigating officers in that case. The Magistrate further notes that all *physical* evidence was available for inspection and expert witness testing by defense counsel. (Record p. 208). [Italics supplied.]

After reviewing the entire police records and the state court record, we ourselves are unable to determine positively whether the supplemental offense reports containing information on Cantera, Valenzuela, and the Santos brothers were furnished to the defense for trial preparation. The clear implication that we perceive from the record is that this material was indeed withheld, for there is a conspicuous absence in the state court trial record of any attempt to raise the issue suggested by the (withheld) offense reports or of any mention of the

individuals concerned by the defense or the state. Furthermore, the state itself has never asserted that it turned over this requested information to the defense. We must therefore remand this issue to the district court for a specific finding as to that issue, including the taking of additional evidence with regard to it.[7]

*Conclusion*

In conclusion, we find that if the offense reports requested by the petitioner were withheld from him during his state court trial for murder, this constituted a violation of his due process rights. We remand this proceeding to the district court for a further evidentiary hearing to determine if the requested offense reports were actually withheld. If, after such a hearing, the district court concludes that they were, we further instruct that court to vacate the petitioner's conviction and to issue the writ of habeas corpus, unless within a reasonable period of time to be fixed by the district court the state shall again try the petitioner.

**REMANDED WITH INSTRUCTIONS.**

---

7. The Magistrate (and the State on appeal) rely on *Landry v. State of Alabama*, 579 F.2d 353 (5th Cir. 1978). This case, however, is inapposite to the present issue. *Landry* did not concern a specific request to produce the allegedly

suppressed *Brady* material; additionally, the claimed *Brady* information in *Landry* that the state did not volunteer would have affected neither the determination of the defendant's guilt nor his punishment.