Major FORTENBERRY,
Petitioner-Appellant,

v.

Ross MAGGIO, Jr., Warden,
Respondent-Appellee.

No. 79–4091
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 4, 1982.

Major Fortenberry, pro se.

James David Caldwell, Dist. Atty., 6th Judicial Dist., Tallulah, La., for respondent-appellee.

Before GEE, GARZA, and RANDALL, Circuit Judges.

GARZA, Circuit Judge:

Appellant, Major Lee Fortenberry, is currently serving twenty-five years at hard labor for armed robbery in violation of La. Rev.Stat.Ann. § 14:64. Following that conviction, and its subsequent unsuccessful appeal, Fortenberry petitioned *pro se* for federal writ of habeas corpus. Two theories for such relief were asserted: (1) that his in-court identification had been tainted by an impermissibly suggestive out-of-court lineup; and (2) that the foreman of his jury illegally made notes during the course of the trial which were later used during jury deliberations. Although the state failed to

file a response in support of its position despite a magistrate's request for such, the district court denied the petition on the basis of the Louisiana Supreme Court opinion which followed Fortenberry's direct appeal.[1] This appeal followed; for the reasons set forth below we reverse in part and affirm in part.

### The Identification

On August 4, 1972 at about 5:00 p. m., two black men entered Goodrum's Grocery Store in Madison Parish, Louisiana. After asking that some meat be cut for them, one of the men withdrew a .22 caliber pistol and pointed it at James E. Goodrum, the owner of the store. His accomplice armed himself with a meat cleaver from the butcher's counter. The only other person in the store was Alonzo King, an employee. After taking a radio and money from both the cash register and Goodrum, the robbers destroyed the telephone and fled.

A few days later both Goodrum and King were asked to come down to the sheriff's office to identify two men suspected of the crime. There the witnesses viewed Fortenberry, the other suspect, and one or two other men of different height and skintone, through a one-way mirror.[2] Fortenberry was identified. It is his contention that his later in-court identification had been tainted by this impermissibly suggestive lineup.

As has been previously noted in *Landry v. State of Alabama*, 579 F.2d 353, 354–55 (5th Cir. 1978):

The due process standard against which police identification procedures are to be measured has developed into a bipartite inquiry in this circuit. As a threshold inquiry, the court must decide whether the identification procedure was unnecessarily suggestive. If so, the court then must determine whether such a procedure created a substantial risk of misidentifi-

---

1. *State v. Fortenberry*, 307 So.2d 296 (La.1975).

2. As the state court noted:
The suspects were much taller than the others and were lighter skinned. The deputy testified that the suspects stood 6'1" and weighed 165–170 pounds while the other men

were about 5'9" and weighed about 190 pounds. The deputy who conducted the lineup admitted that there was no attempt to place the suspects with men of similar physical appearance.
*Id.* at 297.

cation. *Allen v. Estelle*, 568 F.2d 1108, 1111–12 (5th Cir. 1978). Reliability of the identification is the linchpin in determining whether the due process standard of fairness has been met, *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), and the factors to be considered in determining reliability are those set out in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). There the Supreme Court stated:

> . . . [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

409 U.S. at 199, 93 S.Ct. at 382. Only if the suggestive identification procedure considered in the light of these factors creates a "very substantial likelihood of irreparable misidentification" are an accused's due process rights violated. *See Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

*See also Passman v. Blackburn*, 652 F.2d 559, 569 (5th Cir. 1981); and *McGee v. Estelle*, 632 F.2d 476, 478 (5th Cir. 1980).

This is essentially the type of analysis the Louisiana Supreme Court opinion, upon which the district court based its denial of habeas relief, performed. First, it assumed

without finding that the lineup was unduly suggestive.[3] It then listed and applied factors previously enumerated in an earlier state court decision which substantially track those discussed in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).[4] Two of those factors were found to apply to King: (1) that he had the opportunity to view Fortenberry at the time of the crime; and (2) that he knew the defendant prior to the crime.

> Both eyewitnesses clearly saw the participants, who were not disguised and were within several feet of them.
>
> . . . .
>
> . . . King, the other eyewitness, testified that he had known the defendant prior to the crime. As King knew the defendant and his confederate, his positive identification was not tainted by any improper procedure.

*State v. Fortenberry*, 307 So.2d 296, 297–98 (La.1975). It would therefore appear that this circuit's two prong due process test has been complied with. There are, however, some flies in the ointment.

On this appeal, Fortenberry points out that King testified that he had known the appellant for six months to a year prior to the crime. Appellant asserts that this statement is false since he had been in the military in Colorado until two months before the offense. Further, as to those preceeding two months, appellant claims that he was visiting a Louisiana parish other than the one in which the robbery took place. These allegations go directly against

---

**3.** *Id.*

**4.** As the state court noted:

In *State v. Newman*, 283 So.2d 756 (La.1973), this court stated the following factors to be considered in determining whether there was a sufficient independent basis for the in-court identification.

> "Even if the out-of-court identification was tainted, if the in-court identification had a source independent of the out-of-court identification, the in-court identification does not violate defendant's due process rights. . . . A determination of whether the witness' in-court identification was based on an independent source seems to involve three factors:

> "1. The prior acquaintance of the witness with the accused. . . .
> "2. Length of time the witness observed the perpetrator before, during and after commission of the offense. . . .
> "3. The circumstances under which the observation was made. . . . This consideration should include illumination at the scene, the physical capacities of the witness, and the emotional state the witness was in at the time of observation."

This position was reaffirmed and applied subsequently in *State v. Moseley*, 284 So.2d 749 (La.1973).

*Id.* at 297–98.

one of the basic assumptions the state court made in determining whether Fortenberry's due process rights had been violated. Moreover, the tone of that opinion indicates that great emphasis was placed upon it.[5]

We note at the outset that the factual determinations made by a state court after an evidentiary hearing are entitled to a presumption of correctness upon review. *Grantling v. Balkcom*, 632 F.2d 1261, 1263 (5th Cir. 1980); 28 U.S.C. § 2254(d). However, that presumption is not irrebutable. If appellant's contentions concerning King's testimony are true, he might be able to "establish by convincing evidence that the factual determination by the state court was erroneous." 28 U.S.C. § 2254(d). Unfortunately, because the state record has not been provided, the state has never responded to the petition, and no hearing was held in the district court, it is impossible to determine whether the state court's finding that King knew appellant was correct.

As to the other factors to be considered in evaluating the likelihood of misidentification, the state court noted that King had the opportunity to observe the perpetrator at the time of the crime. It also noted that the lineup occurred only a few days after the robbery. It did not, however, make any findings concerning King's degree of attention, his emotional state at the time of observation, the accuracy of his prior description of the criminal, nor the level of certainty he demonstrated at the confrontation. While it has been held that "there is no requirement that positive findings be made on all five factors before a court can find that there is not substantial likelihood of misidentification,"[6] where a lower court primarily bases its decision upon an erroneous assumption the due process standard has not been met.

Since it is also impossible for us to determine from the record whether other evidence against Fortenberry was so overwhelming that it could fairly be said that he was not prejudiced by the in-court identification, it is ordered that this case be remanded for an evidentiary hearing on the independent reliability of the identification.

### The Juror's Notes

At the hearing on defendant's motion for a new trial it was elicited that the foreman had taken some notes during trial on a piece of scrap paper measuring approximately 1½ " by 2". It was further admitted that the foreman had referred to them during deliberations; no one else saw the notes, but other jurors might have seen him refer to them. Although the trial court recognized that this conduct violated state law,[7] the policy reasons underlying another state law[8] precluded the granting of the motion for new trial.[9]

---

5. After laying out the two prong test, the court proceeded to apply to the case at hand those factors which support a determination that there was a sufficient independent basis for the in-court identification. As to Goodrum, the court detailed the fact that he was held up at gunpoint, that money was taken off his person and that he had five to ten minutes in which to observe the defendant. From this the court concluded that Goodrum's later identification was not based upon the lineup. While the court reached the same conclusion as to King, the main consideration in making that determination was the fact that King knew the defendant prior to the crime. *Id.* at 298.

6. *Landry v. State of Alabama*, 579 F.2d 353, 355 (5th Cir. 1978).

7. La.Code Crim.Pro.Ann. art. 793 provides that

A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.

8. La.Rev.Stat.Ann. § 15:470 which states that

No juror, grand or petit, is competent to testify to his own or his fellows' misconduct, or to give evidence to explain, qualify or impeach any indictment or any verdict found by the body of which he is or was a member; but every juror, grand or petit, is a competent witness to rebut any attack upon the regularity of the conduct or of the findings of the body of which he is or was a member.

9. This precise question had previously been addressed in *State v. Ledet*, 298 So.2d 761 (La. 1974).

Under his second theory for habeas relief, appellant asserts that the trial court's denial of the motion violated both his constitutional right to a trial by an impartial jury and his right to challenge the evidence against him. We disagree. We note that in the past it has been held that those rights have been violated when it was found that extrinsic factual matters prejudiced the jury's deliberations. *See, e. g., Parker v. Gladden,* 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966); *Durr v. Cook,* 589 F.2d 891, 894 (5th Cir. 1979); *United States v. Winkle,* 587 F.2d 705, 714, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979); and *United States v. Howard,* 506 F.2d 865, 867 (5th Cir. 1975). It has also been held that a defendant's constitutional rights cannot be overcome by La.Rev.Stat.Ann. § 15:470. *Durr v. Cook,* 589 F.2d at 893. But the only alleged extrinsic evidence Fortenberry alleges is the juror's notes. "Allowing jurors to take notes and use them during deliberations is a matter within the discretion of the trial court; absent abuse of discretion, the action of the trial court will not be disturbed." *United States v. Rhodes,* 631 F.2d 43, 45 (5th Cir. 1980) (and cases cited therein). Appellant has failed to indicate any factor in this case which rises to the level of a constitutional violation with respect to the notes. As a result, this part of the district court denial of Fortenberry's petition is affirmed.

REVERSED IN PART, AFFIRMED IN PART.

Thus, although Article 793 prohibits the reference to notes by a juror, a discovery of the violation of this article after a verdict is reached does not necessarily constitute prejudicial and reversible error.

. . . .

We are also influenced in our conclusion by the more important policy considerations set forth by La.R.S. 15:470. This enactment provides that no juror "is competent to testify to his own or his fellows' misconduct, or to give evidence to explain, qualify or impeach . . . any verdict" of a jury on which he served.

The underlying policy reasons behind this statute relate to the public interest in finality of verdicts and in encouraging freedom and frankness in jury discussion in reaching them. To permit post-verdict judicial examination of the mental processes by which the jury reached its verdict would lead to indefinite prolongation of the trial process by the losing party. To permit revelation, after the verdict, of the jury debate would inhibit it during the discussion.

*Id.* at 765.