This is an appeal from the circuit court's denial of a petition for post-conviction relief.
In 1983, Danny Joe Bradley was convicted of capital murder and sentenced to death. That conviction and sentence were affirmed on direct appeal. Bradley v. State, 494 So.2d 750
(Ala.Cr.App. 1985), affirmed, Ex parte Bradley, 494 So.2d 772
(Ala. 1986), cert. denied, Williams v. Ohio, 480 U.S. 923,107 S.Ct. 1385, 94 L.Ed.2d 699 (1987).
In 1987, Bradley filed a pro se petition for post-conviction relief under Rule 20, A.R.Cr.P. Temp. After appointment of counsel, Bradley filed two amended petitions. Following four evidentiary hearings, the petition was denied. On this appeal from that denial, Bradley raises two issues: (A) that, pursuant to Rule 20.1(a), he was denied his due process right to a fair trial because of the State's failure to disclose four items of exculpatory evidence prior to his trial as required byBrady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215
(1963), and (B) that, pursuant to Rule 20.1(e), this exculpatory material qualifies as newly discovered evidence, entitling him to a new trial. *Page 1341 
 I
Bradley claims that the State withheld the following four items of exculpatory information from him: (1) an alleged confession to the murder of the victim, Rhonda Hardin, by Ricky McBrayer; (2) a similar confession by Keith Sanford, (3) a police file "note" implicating Ricky Maxwell, and (4) forensic test results which were either invalid or inconsistent with the conclusion that Bradley alone had sexual contact with the victim prior to her death.
 (1) The McBrayer Confession
Bradley's first claim, that the State failed to disclose the existence of a confession by Ricky McBrayer to one Glenn "Coffee" Burns, is procedurally barred from review here. The failure to disclose the alleged McBrayer confession was raised on motion for new trial in 1983 and was addressed by this court on direct appeal in 1985. See Bradley v. State, 494 So.2d at 767-68. "A petitioner will not be given relief under [Rule 20] based upon any ground . . . [w]hich was raised or addressed on appeal or in any previous collateral proceeding. . . ." Rule 20.2(a)(4), A.R.Cr.P.Temp.
Furthermore, with regard to the McBrayer confession, the trial judge made the following findings of fact in his order of January 9, 1989, denying the petition:
 "At the hearing on this petition, Burns testified as he did at the hearing on the motion for a new trial. Former Piedmont Police Chief David Amberson testified that McBrayer had never confessed to any police officer and there was no reason to arrest McBrayer in connection with the murder of Rhonda Hardin. Amberson had previously testified at the motion for new trial hearing that he had instructed former ABI Agent Dave Dothard and former Piedmont Police Officer Charles Brown to investigate the possibility that McBrayer had been involved in the murder, and that this investigation disclosed that McBrayer was not involved. (R. 478-479)
 "Former detective sergeant Charles Brown testified in a deposition, which was stipulated into evidence, that his investigation led him to rule McBrayer out as a suspect in the murder of Rhonda Hardin. Brown also testified that he was aware of 'hard feelings' between Burns and McBrayer at the time Burns made his report to police. Brown testified that he was suspicious of Burns' claim when it was first brought to the police. Brown also testified that McBrayer denied being involved in any way with the murder when questioned following Burns' claim.
 "District Attorney Robert Field testified at the evidentiary hearing that there were numerous rumors circling around the community at the time of the offense as to who might have been involved in the murder. Field testified that McBrayer's name came up along with others prior to discovery of all the evidence in the case.
 "Rickey McBrayer testified at the evidentiary hearing that the night of the murder, he was at the LaMont Motel in Piedmont with friends. He then traveled into Georgia with a couple of people for about thirty minutes before returning to Piedmont, at about dark. McBrayer testified that he did not know Rhonda Hardin, he was not present when she was killed, and he never told Burns that he killed her. He recalled being questioned by the police some time after the murder. McBrayer testified that he was never alone the night of the murder.
 "This Court notes that the parties stipulated into evidence a forensic report that indicates that McBrayer has Type A blood and is a secretor. Based on the forensic evidence presented at petitioner's capital murder trial, McBrayer would have been in the same forensic classification as Gary Hardin, Jimmy Issac, Phillip Manis and Johnny Bishop. (R. 258-259). Consequently, McBrayer would not be a likely suspect in the rape/sodomy of Rhonda Hardin. Petitioner was tested prior to trial and shown to be a non-secretor. (R. 259)
". . . .
 "This Court further finds, after considering the testimony and evidence *Page 1342 
presented, that there is no merit to Burns' claim that McBrayer confessed to him. This Court finds Burns to be not credible and truthful based on the testimony presented at trial, the hearing on the motion for a new trial and the hearing on this petition. Where Burns' testimony conflicts with that of Amberson and Brown, this Court accepts the testimony of the two former Piedmont police officers as credible and truthful.
 "In addition, this Court specifically finds that the Piedmont Police Department did not improperly conceal Burns' identity from trial counsel or improperly inform trial counsel that the confession had been investigated and proved groundless. The appellate courts have affirmed on the disclosure issue and the evidence presented at the evidentiary hearing clearly established that the alleged confession was groundless."
 (2) The Sanford Confession
Bradley's second amended petition contained the following allegation:
 "That a person by the name of 'Keith Sanford' told an unnamed informant that 'we killed Rhonda, and I'll kill you.' This statement was allegedly made while the said Keith Sanford was intoxicated and while he held a knife to the unnamed informant. This information was reported to the Piedmont Police Department on or about February 15, 1983, but was not reported to the Petitioner's Attorneys upon their request for exculpatory material. Such failure to divulge such information violated Petitioner's right to a fair trial and to due process of law."
In his order denying the petition, the trial court made the following findings of fact regarding this claim:
 "Former [Piedmont] investigator Brown testified that an anonymous nineteen-year-old female contacted him by telephone approximately three weeks after the murder and told him that she was in a position of sexual intimacy with Sanford and at some point in the progression of that intimacy she had a change of heart and did not wish to proceed with the act. In an effort to persuade her to continue, Sanford allegedly threatened her with a knife and said he was responsible for Rhonda's death in an effort to coerce her. Brown questioned Sanford about this allegation on two or three occasions, but was unable to develop any information of a 'confirmable nature' linking Sanford to the crime or crime scene. Brown had no further contact with the anonymous informant. Brown therefore dismissed Sanford as a suspect in the murder of Rhonda Hardin.
 "A Piedmont Police Department form, Respondent's Exhibit 1 attached to Brown's deposition, indicates that Sanford gave police an alibi for the night of the murder. Sanford testified at the evidentiary hearing that he informed police of his whereabouts the night of the murder. Sanford's testimony was consistent with the information in the police form. Sanford denied knowing the victim or being involved in her death. Sanford denied ever telling anyone that he killed Rhonda Hardin.
 "Former ABI investigator Dave Dothard testified that Sanford was not a suspect in the murder. Dothard testified that there was no evidence that Sanford was involved in the murder. Former investigator Brown also testified that Sanford was dismissed as a possible suspect because the investigative leads regarding any speculation on his involvement in the crime had been followed to their fullest extent and had not developed any concrete evidence. Brown said that there were no more leads to be followed regarding Sanford.
 "After considering the evidence and hearing the testimony, this Court finds that the allegation concerning Sanford is without merit. There existed no evidence to connect Sanford with the murder. An anonymous phone call without any substantiation was not enough to make Sanford a suspect in this case. The evidence indicates that the police checked Sanford's alibi and dismissed him as a possible suspect after investigation. This Court will not grant relief as to this allegation." *Page 1343 
"In order to establish a Brady violation, the defendant must prove (1) The prosecution's suppression of evidence; (2) the favorable character of the suppressed evidence for the defense; (3) the materiality of the suppressed evidence. Monroe v.Blackburn, 607 F.2d 148, 150 (5th Cir. 1979) cert. denied,446 U.S. 957[, 100 S.Ct. 2929, 64 L.Ed.2d 816] (1980). See Moore v.Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972);Killough v. State, 438 So.2d 311, 316 (Ala.Cr.App. 1982), rev'don other grounds, Ex parte Killough, 438 So.2d 333 (Ala. 1983)." Sexton v. State, 529 So.2d 1041, 1045 (Ala.Cr.App. 1988). "Pursuant to United States v. Bagley, 473 U.S. 667,105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), undisclosed evidence is material under the Brady rule . . . only when it is reasonably probable that the outcome of the trial would have been different had the evidence been disclosed to the defense."Hamilton v. State, 520 So.2d 155, 159 (Ala.Cr.App. 1986) Exparte Hamilton, 520 So.2d 167 (Ala. 1987), cert. denied, __________ U.S. __________, 109 S.Ct. 180, 102 L.Ed.2d 149
(1988).
 "Even where there is total nondisclosure of information the test is whether the use of the information at trial would have changed the result by creating a reasonable doubt where one did not otherwise exist. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Jones v. State, 396 So.2d 140 (Ala.Cr.App. 1981). As the United States Supreme Court stated in Beck v. Washington, 369 U.S. 541, 558, 82 S.Ct. 955, 964, 8 L.Ed.2d 98 (1962):
 " 'While this Court stands ready to correct violations of constitutional rights, it also holds that it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality.' " Parker v. State, 482 So.2d 1336, 1340-41 (Ala.Cr.App. 1985).
Bradley's argument that the nondisclosure of Keith Sanford's name as one of a number of possible suspects in this murder case denied him due process bears striking resemblance to the argument made by the petitioner, and rejected by the Eleventh Circuit Court of Appeals, in Jarrell v. Balkcom, 735 F.2d 1242
(11th Cir. 1984), cert. denied, 471 U.S. 1103, 105 S.Ct. 2331,85 L.Ed.2d 848 (1985):
 "While investigating the murder, the police investigated various leads and came up with several 'possible suspects.' Petitioner contends that a Brady violation occurred because the defense and the jury had a right to know the names and evidence concerning these other suspects. The respondent contends that these 'possible suspects' were not readily identifiable, in that these 'possible suspects' were merely talked to by the police to see what possible information they might have; none of these persons were suspects in the sense that the investigation actually focused on them.
 "Brady requires the prosecution to produce evidence that someone else may have committed the crime. See Sellers v. Estelle, 651 F.2d 1074 (5th Cir. 1981). In comparison with the other suspect in Sellers, the 'other suspects' in the instant case were ephemeral. In Sellers, police reports indicated that another person had actually admitted committing the crime with which defendant was charged. Id. at 1075. In the instant case, police reports listed hundreds of possible suspects. Finding a Brady violation under these circumstances would be tantamount to requiring the government to turn over their entire investigation. Because Brady
created no such general constitutional right to discovery, see Weatherford v. Bursey, 429 U.S. 545, 559-60, 97 S.Ct. 837, 845-46, 51 L.Ed.2d 30 (1977), petitioner has failed to show a due process violation." 735 F.2d at 1258.
As the trial court's findings of fact indicate, Bradley failed to show that the nondisclosure of unsubstantiated rumor linking Keith Sanford to the offense for which Bradley was convicted would have altered the outcome of Bradley's trial.
 (3) The Ricky Maxwell Note
Bradley's second amended petition also alleged: *Page 1344 
 "That investigators from the Piedmont Police Department and the Alabama Bureau of Investigation were given a note from Danny Smith, an investigator with the Cherokee County District Attorney's Office, on or about May 12, 1983, which note stated, 'Rickey Maxwell killed Rhonda — Piedmont, AL.' Said note or information contained thereon was not reported to the Petitioner's Attorneys upon their request for exculpatory material. Such failure to divulge such information violated Petitioner's right to a fair trial and to due process of law."
With regard to this claim, the trial court entered the following findings:
 "[Former ABI Investigator Dave] Dothard testified that Smith gave the note, Petitioner's Exhibit B, to himself and Brown. On May 16, 1983, Dothard interviewed Anita Beecham about the note she had written. Beecham was Maxwell's former girlfriend and they had been living together. Prior to her writing the note Maxwell had beaten Beecham. Beecham told Dothard that Maxwell had introduced her to petitioner and that Maxwell and petitioner would 'go off alone together and talk.' Beecham could provide Dothard with no evidence to connect Maxwell to the murder, other than her 'intuition.' Dothard testified that there was no evidence that Maxwell had any involvement in the murder of Rhonda Hardin. According to Dothard, Maxwell was not a suspect. Dothard testified that the note would not make Maxwell a suspect because 'anyone can write a note.'
 "Based on the evidence presented at the hearing, this Court finds no merit to this allegation. The police, within four days of receiving petitioner's Exhibit B, interviewed its author, Beecham, to determine whether she had any information concerning the murder. After the interview the police determined that there was no evidence to implicate Maxwell and Hardin. This allegation is without merit as the police promptly checked into the claim and determined it to be without basis. This Court finds no prejudice to any of petitioner's rights."
The materiality analysis we set out in dealing with the Keith Sanford evidence is equally applicable here. There was simply no reasonable probability that, had the Ricky Maxwell note been disclosed to the defense, the outcome of the trial would have been different.
The trial court's finding that the claim was "baseless" is supported by testimony presented at the evidentiary hearings, which established that police investigators received hundreds of leads, followed them to the extent possible, and, without evidence corroborating their tips, dismissed many individuals as suspects.
The District Attorney testified: "In a case like this, it's highly volatile and highly publicized. Law enforcement officials are barraged with calls about, you know, so-and-so did it or this one did it. In this case, my recollection is they ran down every one of those leads to determine whether or not there was any credulence to that theory."
Defense counsel Ralph Brooks testified as follows:
 "Q. Mr. Brooks, would it be a fair statement to say that as you were preparing for trial in this case that the Piedmont community was overrun with rumors concerning who actually killed Rhonda Hardin?
"A. I would say that was a fair statement.
 "Q. And you received information from numerous individuals about possible suspects in this case?
"A. Yes, sir.
 "Q. Did you attempt to locate or run down each one of these suspects in this case?
 "A. Now — I recall now that you mention it, I had a check list that I saw the other day, that I had 47 different names on it that I had checked off as running down possible items on. Most of them turned out to be absolutely nothing to them. They would get — there would be no substance to them. It would be a rumor that so and so knew this and *Page 1345 
told me this, but when you got back to the source of the rumor, it was always, 'No, I never said that.' It would go nowhere."
Under the circumstances, Keith Sanford and Ricky Maxwell were not "suspects in the sense that the investigation actually focused on them." Jarrell v. Balkcom, 735 F.2d at 1258. The Sanford and Maxwell leads, based on unconfirmed hearsay and dismissed after investigation, were, as the Eleventh Circuit characterized it, "ephemeral." Id. These ephemeral leads, at most, amounted to "a matter of speculation" rather than a "demonstrable reality," see Beck v. Washington, supra (quotedin Parker v. State, 482 So.2d at 1341), that Bradley's trial was unfair. Thus, Bradley did not sustain his burden of proving that, had he known of either lead prior to trial, the result of the proceeding would have been different.
 (4) The Forensic Serology Test Inconsistency
Bradley alleged in his petition that
 "an investigator for the Piedmont Police Department was orally informed by the Alabama Department of Forensic Sciences that certain test results were invalid or inconsistent with other, controlled test results. This information was not contained in the written documentation of the laboratory test reports used at the Petitioner's trial. Such failure to divulge such inconsistencies in the test results to Petitioner's Attorneys or in the written lab reports constitutes a fraud perpetrated upon the Petitioner and the Court by the Alabama Department of Forensic Sciences and the Piedmont Police Department, and as the forensic evidence was a material factor in the conviction of the Petitioner, the Petitioner was denied fairness and due process of law."
The trial court made the following findings on this claim:
 "Petitioner introduced at the evidentiary hearing a handwritten note from the Piedmont Police file, Petitioner's Exhibit # 2, which was dated February 9, 1983 and entitled 'Re: Telephone Conversation with Fay Ogletree.' The note details some forensic serology information apparently involving the examination of the victim.
 "Some of the information in this note is consistent with Faye Ogletree's report of March 2, 1983, but petitioner relies upon that portion of the note that states:
 " 'B and H factor both remain or diminish together. In this case the H stayed and the B vanished with dilution. This is not consistent with controlled test results.' "
 There is no indication on the face of the exhibit to further explain the above-quoted portion and petitioner presented no evidence as to who wrote this note or whether it was actually based on a conversation with anyone from the Department of Forensic Sciences.
 "[District Attorney] Field testified that all Ogletree's forensic reports were turned over to trial counsel. Field did not know who wrote this exhibit. Field testified that he spent two days prior to petitioner's trial talking with Ogletree about her report, but now, more than five years later he could not recall the details of her expert testimony. [Defense Counsel] Brooks testified that he had lengthy conversations with Ogletree prior to trial and discussed this particular point or something very similar. [Defense Counsel] Dick testified that he went with Brooks to meet Ogletree in Birmingham and they reviewed the reports for several hours with her. Dick testified that Brooks was more familiar with forensic testimony, but that he could not say that this exhibit conflicted with the reports that were provided to them prior to trial.
 "Petitioner presented no evidence to indicate that the information contained in this exhibit conflicted in any way with the lab reports presented to trial counsel by Faye Ogletree. In fact the testimony at the hearing indicated that trial counsel covered this point with Ogletree prior to trial. The exhibit itself may explain the alleged problem when it states:
 " 'B group found in rectum and vagina may not be a factor. Reading may be *Page 1346 
a fluke due to the bacterial activity in those two body cavities.' "
 Ogletree's final report was issued almost one month after the date on this exhibit, and the exhibit itself refers to certain 'body fluid examinations' that were not completed at the time this exhibit was written. Ogletree's testimony, (R. 247286), indicates that Rhonda Hardin was a secretor, while the exhibit states that there was at that time only a preliminary indication as to her blood type and antigen analysis.
 "This Court finds as a fact that this allegation does not constitute newly discovered evidence. Trial counsel indicated a familiarity with the information, and there is no apparent inconsistency between the exhibit and the evidence disclosed to trial counsel and presented at trial."
The trial court's finding that defense counsel "discussed this particular point or something very similar" with forensic serologist Faye Ogletree prior to trial is supported by the evidence and leads to the conclusion that "[t]rial counsel indicated a familiarity with the information, and there is no apparent inconsistency between the exhibit and the evidence disclosed to trial counsel and presented at trial."
Since testimony at the evidentiary hearing indicated defense counsel were familiar with the claimed "inconsistent" serology evidence, and in fact discussed it with the serologist, Bradley failed to carry his burden of proving the first prerequisite for a Brady violation: that the prosecution "suppressed" evidence. See Smitherman v. State, 521 So.2d 1050, 1059-60
(Ala.Cr.App. 1987) cert. denied, 521 So.2d 1062 (Ala. 1988). "The term suppression 'means nondisclosure of evidence that the prosecutor, and not the defense attorney, knew to be in existence.' Ogden v. Wolff, 522 F.2d 816, 820 (8th Cir. 1975)."Donahoo v. State, 552 So.2d 887 (Ala.Cr.App. 1989).
 II
Bradley maintains that the same four items of evidence not disclosed to him as exculpatory material also qualify under Rule 20.1(e) as "newly discovered evidence." That rule requires:
 "(1) the facts relied upon were not known by petitioner or his counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to Temporary Rule 13, or in time to be included in any previous collateral proceeding, and could not have been discovered by any of those times through the exercise of reasonable diligence; and
 "(2) the facts are not merely cumulative to other facts that were known; and
 "(3) the facts do not merely amount to impeachment evidence; and
 "(4) if the facts had been known at the time of trial or sentencing, the 'result would probably have been different; and
 "(5) the facts establish that petitioner is innocent of the crime for which he was convicted or should not have received the sentence that he did."
The Ricky McBrayer evidence is not newly discovered because it was "known by petitioner or his counsel at the time of . . . sentencing or in time to file a post-trial motion pursuant to Temporary Rule 13 . . ." In fact, it was the subject of a motion for new trial and was rejected on appeal to this court.Bradley v. State, 494 So.2d at 767-68.
The Keith Sanford and Ricky Maxwell leads do not qualify as newly discovered evidence because the trial court specifically found them to be incredible. The court noted that, "the allegation concerning Sanford is without merit. There existed no evidence to connect Sanford with the murder," and the court ruled: "Based on the evidence presented at the hearing, this Court finds no merit to [the Ricky Maxwell] allegation . . . [because] the police promptly checked into the claim and determined it to be without basis."
With regard to Bradley's newly discovered evidence claims in general, the court found:
 "After reviewing all of petitioner's claims of newly discovered evidence and/or prosecutorial misconduct for alleged *Page 1347 
failure to disclose exculpatory evidence, this Court finds that in light of all the evidence presented at trial and at the evidentiary hearing, petitioner received a fair trial in 1983 and was properly convicted of capital murder and subsequently properly sentenced to death. Amidst the vast myriad of allegations, rumors and innuendo presented over the eleven months since the initial petition was filed in this matter, petitioner has not yet produced a single shred of evidence that he was not responsible for the murder of Rhonda Hardin. Eighteen witnesses provided testimony at the evidentiary hearing and the parties conducted ten additional depositions prior to the hearing, yet petitioner did not produce any evidence that would indicate that he did not murder Rhonda Hardin.
 "The Court does however note that petitioner himself testified at the evidentiary hearing, and denied any involvement with or his even being present during the murder. Respondent then called Jeffery Bragg, who testified that he talked with petitioner while they were both incarcerated in the Calhoun County Jail in early 1988. Bragg testified that he asked petitioner how he could do something like he had and petitioner replied that he was not in the right state of mind when he did it. Bragg testified that he had no knowledge of the crime and was not threatened or offered any reward to testify at the evidentiary hearing. Bragg was incarcerated on a theft of property, third degree, charge and had never been convicted of any other crime. This Court finds Bragg to be credible and petitioner not to be credible."
The circuit court properly denied the petition where he did not believe [Bradley's] newly discovered evidence:
 "[A petition for post-conviction relief] is not some 'probable cause' hearing at which the trial judge determines whether the petitioner/defendant should be accorded a new trial so that the trier of fact will have the benefit of the additional testimony.
 "To the contrary, these decisions clearly show that the trial judge must 'believe' the testimony and that the burden on petitioner is to submit clear, full and satisfactory proof of his assertions for relief." Seibert v. State, 343 So.2d 788, 790 Ala. 1977. (Emphasis in original.)
Under Rule 20.3, the petitioner has "the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle him to relief." Here, Bradley did not carry that burden.
 " ' "In a coram nobis proceeding the petitioner bears the burden of submitting clear, full and satisfactory proof of matters which, had they been timely submitted at trial, would have prevented a judgment of conviction. . . . This burden extends beyond a mere balancing of probabilities to clearly and convincingly satisfy the court. . . .
 " ' "The degree of proof is 'highly exacting as to facts "and always means more than reasonably satisfying." ' The petitioner must convince the trial judge of the truth of his allegation and the judge must 'believe' the testimony." Summers v. State, 366 So.2d 336, 343 (Ala.Cr.App. 1978), cert. denied, Ex parte Summers, 366 So.2d 346 (Ala. 1979) (citations omitted).
 " ' "Even where conflicting evidence is presented at a hearing on a petition for writ of error coram nobis, the trial judge must 'believe' the evidence offered by the petitioner before he will be justified in granting relief. Seibert v. State, 343 So.2d 788, 790 (Ala. 1977)." Howton v. State, 432 So.2d 548, 550 (Ala.Cr.App. 1983).
 " ' "This Court cannot pass upon the credibility of witnesses," Grimes v. State, 24 Ala. App. 419, 136 So. 485 (1931), nor "pass judgment on its possible truthfulness or falsity." Fagan v. State, 35 Ala. App. 13, 17, 44 So.2d 634, cert. denied, 253 Ala. 444, 44 So.2d 638 (1949).' Clemmons v. State, 459 So.2d 997, 998 (Ala.Cr.App. 1984)." Winstead v. State, 558 So.2d 965 (Ala.Cr.App. 1989). *Page 1348 
Finally, the claimed invalid or inconsistent forensic serology evidence is not "newly discovered", because the trial court "[found] as a fact that this allegation does not constitute newly discovered evidence. Trial counsel indicated a familiarity with the information. . . ."
The order of the circuit court is affirmed. AFFIRMED.
All Judges concur.
 *Page 363