**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 19, 2009

Charles R. Fulbruge III
Clerk

No. 07-40723

MARCUS PHILLIP BROWN

                                        Plaintiff - Appellant

v.

FRED LIPPARD

                                        Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:03-CV-12

Before REAVLEY, WIENER, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Marcus Phillip Brown, an inmate at a Texas correctional facility, appeals from a judgment on a jury verdict rejecting his Section 1983 claim for excessive use of force. Brown asserts that the verdict should be vacated and that his case should be remanded for a new trial. We disagree and AFFIRM.

## I. BACKGROUND

Brown's suit concerns a September 1998 incident in which Brown alleges then-correctional officer Fred Lippard used excessive force when escorting

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Brown from his cell to a day room for recreation. Brown's original Section 1983 claim proceeded to a jury trial in 2001. Brown, appearing *pro se*, prevailed and was awarded $27,500 in compensatory and punitive damages. Prior to entering a judgment on the jury's verdict, however, the district court ruled on a motion to dismiss for failure to exhaust administrative remedies. It relied on a newly issued Supreme Court opinion requiring exhaustion regardless of the type of relief available through the administrative process. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The court dismissed Brown's claim without prejudice so that Brown could exhaust his administrative remedies.

After finishing the administrative process, Brown filed the present suit against Lippard, complaining of the same excessive use of force. Brown's claim again went to trial in 2007. This time the jury returned a defense verdict, finding in a special interrogatory that Lippard did not use unreasonable, unnecessary, or excessive force. After judgment, Brown timely appealed.

## II. DISCUSSION

Brown's primary appellate argument is that the district court erred in denying his request for a transcript[1] of the 2001 trial. Brown maintains that he needed the transcript for impeachment purposes during his second trial. He submits that Lippard and Russell Johse, another correctional officer who witnessed the incidents leading to the alleged excessive use of force, perjured themselves during the 2007 proceedings. He argues their testimony at the second trial materially differed from their prior testimony.

Brown's first request for a free transcript was considered under a statute that allows a person who is permitted to appeal *in forma pauperis*, to have the fees for a transcript paid by the United States if there is a judicial certification "that the appeal is not frivolous (but presents a substantial question)." 28 U.S.C.

---

[1] Brown refers to this as the "voir dire transcript"; however, it is clear from the record that he is referencing the transcript of the 2001 trial testimony.

§ 753(f). Brown first requested a copy of the 2001 transcript during post-judgment proceedings with respect to that first trial. The district court denied that request. That denial is not now before us and those events are irrelevant.

Brown again made production of the 2001 transcript an issue during his 2007 trial. He did so when the witness Johse testified that he could not remember whether Brown followed proper prison protocol when exiting his cell for recreation prior to the use of force. Brown attempted to question Johse regarding the testimony he had given in 2001, but Johse stated that he could not remember it. Brown then indicated that he did not have a transcript of those statements with which to impeach Johse.

Outside of the presence of the jury, Brown explained to the court that he had requested a copy of the "witness's statement" at the previous trial "so that [he] could have something to present." The trial judge was uncertain whether the 2001 proceedings were ever transcribed. When the court asked defense counsel whether a transcript of the 2001 trial testimony existed, she responded by referring to the 2001 post-trial hearing on exhaustion:

> The hearing afterwards – the evidentiary hearing afterwards were transcribed because we obtained those because of that exhaustive issue. Anyway, as far as the other, I'm not aware at this time if it was. Now as far as – he's never sent me a discovery request asking for transcription of the trial and I've never been disclosed that I didn't have it. And I've never been ordered . . . to produce it.

Brown replied that he had not made a written request for the transcript. At that point, he had made an oral motion, which was denied. The court again indicated uncertainty about the transcript's existence: "whether or not the testimony [the witnesses] gave was ever transcribed in written form I don't know. I have no idea." Brown stated that he had requested that the proceedings be transcribed but that his request had been denied. The court concluded that the 2001 trial had not been transcribed, stating "if it doesn't exist, I'm sorry that

I can't furnish it to you." Brown explained that he needed the transcript to contradict anticipated testimony from Lippard that Brown had not followed proper protocol in exiting his cell and that Lippard had used physical force against him only for that reason. The court determined that this purpose could be served through Brown's cross examination of Lippard.

At the conclusion of the 2007 trial, after Lippard's testimony, Brown again asked about the 2001 transcript. He stated,

> And the next thing that I want – I don't know how to do it. I mean I'm in here above my head. I'm not willing to admit when I'm above my head. Okay. But the officers that have gotten up there and testified on the stand have given totally different statements, totally different. I mean the whole cross from the last hearing.
>
> So either they [perjured] themselves then or they're [perjuring] themselves now. And I don't know how to go about getting what I need to prove that they [perjured themselves]. But I – on everything I stand for as a human being, they are [perjuring] themselves. And I don't have the material that I requested so that I could have this just for this instance. I was denied it.

Brown once more noted that he had requested and been denied the transcript because he "didn't know how to word it, . . . that [he] was trying to use it for impeachment." He said he had asked for the transcript prior to the recent trial when he appeared before the court on his motion for a default judgment. He said that the court denied his request because the transcript had no relevance to the case at that time. Lippard's counsel responded,

> I do not ever recall Mr. Brown requesting either in this trial in this case or the previous case a transcript, a trial transcript in the previous trial.
>
> [The court] did bring us down here . . . for a hearing on his motion for default. And I do not recall him at that time him ever asking for a transcript of the previous trial. I may be mistaken. But I do not recall that completely.

Ultimately, the court again concluded that the transcript did not exist. The court explained,

had a proper motion been made at the proper time and granted by one of the many courts whose hands this has passed through that [Brown] might have been granted access to . . . a transcript at someone else's expense, not his own.

But it's far, far too late to go into that. There's nothing we can do about that now. Perhaps it has resulted in some disadvantage to him in this trial. But it's just too late to do anything about that.

Brown filed a more formal request for a transcript of the 2001 and 2007 proceedings after judgment was entered. The court granted the motion with respect to the 2007 trial. However, it denied the request for the 2001 transcript.

We examine the different requests for a transcript of the 2001 trial. Brown alleges that he requested a copy during a default judgment hearing prior to the second trial. The record does not support this assertion. We cannot find error when there is a no record of a motion or a denial.

There is record evidence of Brown's requests for a transcript during the 2007 trial itself, as we have quoted from the record. Brown several times requested a copy of the 2001 transcript during the 2007 trial. He sought to justify the transcript's production for impeachment purposes. Though briefly addressing the utility of the 2001 transcript, the district court's comments suggest that its rulings were based largely, and even primarily, on the belief that the 2001 trial was never transcribed. If no transcript was ever made, the court could not provide Brown with a copy.

Notwithstanding the district court's uncertainty regarding the existence of the 2001 transcript, a review of the electronic docket for Brown's 2001 suit reveals that the first trial was transcribed.[2] A copy of the transcript was

---

[2] Although the docket for the 2001 case is outside of our record on appeal, we may take judicial notice of the docket entry establishing the existence of the 2001 transcript. *See*, e.g., *United States v. Mercado*, 412 F.3d 243, 247 (1st Cir. 2005) (taking judicial notice of state court records); *Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1200 n.3 (3d Cir. 1992) (taking judicial notice of the docket entries in a bankruptcy court's file); *Jacques v. U.S. R.R. Ret. Bd.*, 736 F.2d 34, 40 (2d Cir. 1984) (taking judicial notice of a district court pleading in a related case).

docketed in March 2002, shortly before the final judgment in that action. The transcript was docketed in a separate case with a different docket number than the 2007 proceedings. During Brown's efforts to obtain a copy of the transcript, he never notified the court that the first trial had been transcribed. Indeed, he surely was unaware. Lippard's counsel also represented to the court that she was not certain a transcript of the 2001 trial testimony had ever been made.

We know there is a transcript. The trial court may have readily provided it to Brown had its existence been known. Where to go from this point is the question. This late discovery that a transcript existed at the time would not entitle Brown to a new trial without some proof both of error and prejudice. Brown must show that he adequately requested the transcript, that he justified its production, and that he was prejudiced by the court's failure to provide him with a copy.

Brown's request for the transcript in about 2002 is not a motion on which error in the entirely separate trial in 2007 could be shown. The 2002 request was to support an appeal to set aside the judgment. The justification today is, and has to be, different. If Brown requested the transcript immediately prior to the 2007 trial, that action does not appear in the record. Thus, no record exists to consider whether such a denial would have been error.

Thus, we enter the realm of the 2007 trial itself. He must show that it was error for the trial court to rule as it did. Such error would depend on using the proper analysis to apply in reviewing a trial judge's mid-trial decision on obtaining a record of previous proceedings, and the impact of the fact that the trial judge here may primarily have denied the request because of an error – not pointed out by anyone – regarding whether the transcript already existed.

We find a more expedient means to consider the issues regarding the timing and manner of Brown's attempted requests, and consider the ultimate point of whether there was any prejudice to Brown if there was error. The

admission and exclusion of evidence are left to the sound discretion of a trial judge. Error in the decisions will not lead to reversal absent a showing that the complaining party's substantial rights were affected. *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 408 (5th Cir. 2004).

The basic consideration is whether the 2007 trial was so affected by the district court's failure to provide Brown with a copy of the 2001 transcript that a third trial is warranted. The answer depends on what was in the 2001 trial transcript that would have been useful for impeachment.

To look at the transcript, and not just note its existence, as we have already done, requires additional analysis. Authority from other jurisdictions suggests that we may. *See, e.g.*, *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 697 n.4 (7th Cir. 1985); *Jacques v. U.S. R.R. Ret. Bd.*, 736 F.2d 34, 39-40 (2d Cir. 1984). We find those courts' reasoning to be logical and relatively persuasive. Accordingly, for the purpose of assessing the merits of Brown's claims, we will assume *arguendo* that the contents of the transcript are subject to judicial notice. Our examination of the transcript reveals the prior testimony that Brown would have been able to use as ostensible impeachment of Johse and Lippard.

In Brown's 2001 trial, Johse testified that Brown backed out of his cell, that Johse closed the cell door thereafter, and that Brown did not violate prison protocol or do "anything wrong" when exiting his cell. Johse stated that Brown was not being "unruly" or "yelling or screaming" while exiting. After Brown exited his cell, Johse turned away from Brown and Lippard and went to open the door to the recreation room. When he turned back around, Brown and Lippard were both on the ground. He did not witness the use of force.

In 2007, Johse testified that he could not remember whether Brown followed proper protocol in exiting his cell. He again stated that the use of force occurred while he was turned away from Brown and Lippard, so he did not see

what happened. When Brown attempted to impeach Johse with his prior statements, Johse testified that he did not remember giving the prior statements. The impeachment, therefore, would have at most shown that in 2001, the witness recalled Brown's proper and calm exit from the cell.

Turning to Lippard's testimony, Lippard testified in 2001 that Brown did not follow orders when exiting his cell. Brown was instructed to back out of his cell, but Brown twisted and came out of his cell facing forward or sideways. Brown continued to resist, both verbally and physically. Lippard used force to bring him to a controlled position on the ground. In 2007, Lippard testified that when exiting his cell, Brown "back[ed] out very abruptly, just turn[ed] and back[ed] into" him and that Brown threw him "up against the wall, against the door." Lippard further stated, "[i]nstead of backing out, [Brown] twists around abruptly, twisting my body with his and twisting counterclockwise." Brown continued to be physically and verbally aggressive, so Lippard used force to "take [Brown] down." Brown said he wished to impeach Lippard with the statements Brown remembered from the 2001 trial, but Lippard advised that he did not remember making those statements.

We find no basis for a new trial. It is true that Johse stated in 2007 that he could not remember whether Brown followed proper protocol in exiting his cell and that he could not recall his prior statements that Brown followed the appropriate procedures. However, it is undisputed that Johse did not witness the use of force, a fact he acknowledged both in 2001 and in 2007. Moreover, Lippard's characterization of the events leading to the use of force did not vary significantly from 2001 to 2007. In both trials, Lippard testified that Brown did not follow proper protocol in exiting his cell, that Brown verbally and physically resisted Lippard's control, and that Lippard used force to bring Brown to a subdued position on the ground. Lippard's description of exactly how Brown exited his cell was different in 2007, but that distinction did not implicate

Lippard's alleged justification for the use of force or his description of the amount of force used. In both trials, Lippard testified that Brown verbally and physically resisted Lippard's instructions, so Lippard used force to subdue Brown and maintain control. Even if the 2001 transcript would have assisted Brown, and that is not clear, any prejudice from its absence is minor.

No party is entitled to a perfect trial, but only a fair one. We are not finding that no possible benefit could have flowed to Brown from the availability of Johse's prior testimony, though it would only have been usable for impeachment. It would have presented a picture of a fairly calm Brown upon exiting the cell, and then complete lack of knowledge of what happened that led to the altercation. We find no prejudice.

Brown does have other appellate issues. He maintains that the district court erred in preventing him from introducing into evidence the full record of an administrative investigation into the alleged excessive use of force, conducted not long after the incident. Brown identifies the administrative record by number. He argues that it should have been admitted to prove the character of the witnesses. Brown further explains that a witness statement within the record was admissible despite the unavailability of that witness because the statement was undisputed and was capable of "accurate and ready determination." Brown does not name the relevant witness. Nor does Brown provide any record citations allegedly supporting his attempt to introduce this evidence or the district court's ruling on its admissibility.

On balance, Brown's argument is conclusory and inadequately briefed. *See In re Repine*, 536 F.3d 512, 518 n.5 (5th Cir. 2008) (noting that because of conclusory briefing, the court could not "discern the basis or substance" of the appellant's argument, and therefore the argument was waived due to inadequate briefing); *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993).

Finally, Brown contends that Lippard, Johse, and other defense witnesses perjured themselves during the 2007 trial. Brown alleges that the witnesses conspired with each other, changing their testimony in an effort to cover up the excessive use of force and in retaliation against Brown for exercising his right to access the courts. Brown submits that he was also subjected to acts of retaliation outside of court, including prison officials refusing to mail his legal materials and even destroying them. He argues that this conduct violated his Eighth and Fourteenth Amendment rights.

Though referencing perjury and retaliation in different contexts during the course of the 2007 trial and pleadings, these issues were not presented to the jury, and the district court did not rule on these claims. We will not consider these issues for the first time on appeal. *See Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 595 (5th Cir. 2007) ("[I]f a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court. If an argument is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal." (internal quotation marks and citation omitted)); *Brown v. Ames*, 201 F.3d 654, 663 (5th Cir. 2000).

For the above reasons, we affirm the district court's judgment. Brown's request for sanctions is denied.

AFFIRMED.