DENNIS, Circuit Judge,
dissenting.
Sam Rey, an accomplice to the rape and murder of Linda Salinas on June 9, 1996, gave a detailed, sworn, written statement to police on June 12,1996, which completely exculpated Carlos Trevino. This statement by Rey contradicted the testimony of Juan Gonzales, the state’s chief prosecution witness, who said that Trevino participated in the rape and shortly after the crime, Trevino made statements to Rey, Gonzales, and others inculpating himself in Salinas’ murder. In his federal habeas petition, Trevino contends that the state failed to disclose Rey’s June 12th written statement in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and that if the statement had been disclosed and available, his attorneys failed to discover and use it, rendering their assistance ineffective in violation of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 *431 (1984). The majority concludes that Trevino is not entitled to habeas relief because Rey’s June 12th statement is not “material” under Brady and Strickland. The majority reasons that Rey’s statement is not material because the prosecutor in Trevino’s trial would have used a subsequent, June 13th, written statement by Rey, which inculpated Trevino, to contradict Rey’s earlier June 12th statement. However, that later statement does not appear anywhere in the record before the district court in this case; indeed, the majority has produced it sua sponte by going outside of the record in this case, to a record of another state court case to which Trevino was not a party. Neither the state nor Trevino had ever before mentioned Rey’s June 13th statement, let alone litigated the significance of it — for all we know, neither Trevino nor the state’s attorneys in Trevino’s criminal trial, nor the state’s attorneys in Trevino’s habeas proceedings, has ever seen or heard of this statement before the majority sua sponte obtained a copy of it after this appeal was fully briefed.
I respectfully disagree with the majority’s course in taking judicial notice of Rey’s June 13th written statement and using it to resolve this case on its merits. The majority provides no authority that permits us, without request or agreement of the parties, to go outside of the record before the district court, to a state court record of a different case, of a different defendant, to find a statement by a non-party witness who did not testify at the petitioner’s trial. Moreover, the majority makes a determination that Rey’s June 13th statement is more truthful than his June 12th statement, and therefore is a retraction of it; however, such a credibility determination is not a kind of fact that may be judicially noticed, viz., a fact “not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.” Fed. R.Evid. 201(b). Rather than using judicial notice to improperly supersede Rey’s June 12th statement with his June 13th statement that was not part of the district court’s record, we should vacate the district court’s judgment and remand the case for an evidentiary hearing or stipulations of the parties as to the context and circumstances surrounding Rey’s June 12th and 13th statements and for decisions upon the issues arising out of them. I do not share the majority’s confidence in their ability as appellate judges with nothing but a paper record to neatly reconstruct the likely outcome of this case had all of Rey’s statements been disclosed to defense counsel before trial, since Rey’s third statement, upon which the majority so heavily relies in affirming the death penalty, has never been introduced or subjected to any trial court adversary proceedings in this case. Accordingly, I respectfully dissent.
I.
Carlos Trevino was convicted by a Texas jury of the June 9,1996, sexual assault and murder of Linda Salinas in San Antonio, and sentenced to death. The state’s case at the guilt-innocence phase of Trevino’s trial hinged on the testimony of Juan Gonzales. He testified that Trevino and three other young men, Santos Cervantes, Sieni-do (Sam) Rey, and Bryan Apolinar picked up Salinas at a gas station and drove her to Espada Park where they sexually assaulted her; that Cervantes alone had lured Salinas into the car; that Gonzales had seen Cervantes with a knife before Salinas’ murder and Cervantes told Gonzales that he had disposed of the knife after Salinas’ murder; that Gonzales heard Cervantes say something about a knife in the car after Salinas was killed; and that *432 Gonzales believed Cervantes killed Salinas. Gonzales also testified that after the sexual assault, he heard Cervantes and Apolinar say, “we don’t need no witnesses,” and Trevino say, “we’ll do what we have to do”; that he left before Salinas was stabbed, but shortly afterwards, he saw blood on Trevino and Cervantes; and that as the five men drove away from the park, Cervantes said it was “cool” or “neat” how Trevino had “snapped” Salinas’ neck, and Trevino responded that he had “learned how to kill in prison.” The prosecutor relied heavily on Gonzales’ testimony about Trevino’s statement in the car to argue to the jury that Trevino was the actual killer. At the sentencing phase of the trial, the state again rested its case heavily on Gonzales’ testimony that after Salinas’ murder Trevino said that he had “learned how to kill in prison.”
On March 25, 1998 — nearly nine months after Trevino’s conviction — Rey pleaded guilty to murder and received a fifty-year sentence.[1] On May 5, 1998, Cervantes pleaded guilty to capital murder and received a life sentence.[2] Apolinar went to trial and was convicted of aggravated sexual assault.[3] Gonzales, the only one of the group who testified against Trevino, was not charged.
During his federal habeas proceedings, Trevino’s counsel uncovered a sworn, written statement that Sam Rey gave to Detective Barry Gresham, the lead detective investigating Salinas’ murder, on June 12, 1996, three days after Salinas was killed. That statement, which is attached to Trevino’s federal habeas petition, reads in its entirety[4]:
My name is Seanido Rey I was born on 07-29-75. I am 20 years old. I live at 1131 San Fernando with my sister the phone number is 226-0391.
I have already given Det. Gresham a statement, but I would now like to tell the truth of what really happened on last Sunday night.
Everything I said was true about what happened up to the part when we were at the Pic Nic. While we were there I saw a girl talking on the telephone. Santos was talking to her. Det. Gresham showed me a picture of a girl and this was the same girl I saw on the telephone. I signed and dated this photograph. When I went to the car the girl Det. Gresham told me was named Linda came also she was with Santos. We all got in the car with Linda. Linda was in the front right seat sitting in Santo’s lap. [Bryan[5]] was driving the car and I was sitting in the back of the *433 car in the middle. Carlos was sitting to the right of me and [Juan[6]] was on my left. When we left the store Linda and Santos was kissing. [Bryan] went to Mission Rd. and went towards Military Hwy. We then went by a park called Espada. Before we got to the park I saw Santos throw a bra to [Bryan] that Linda had taken off. [Bryan] threw the bra out of the car before we stopped. [Bryan] then parked the car in a parking lot. The whole time we were driving out there Santos and Linda were making out. When we stopped the car Santos and Linda got out. I saw they were holding hands. I knew that he was going to have sex with her. I saw them walking towards the woods. I saw they walked down toward the creek. We all got out and was standing against the car listening to the radio. I never heard any noise coming from the creek. About ten or fifteen minutes later Santos came back from the creek. I think when all this was happening was about 10:30 or so at night but I didn’t look at a watch. When Santos comes back up the creek I asked him where the girl was at. He told me “Fuck that bitch, she didn’t want to give it up so I stabbed her”. I asked him why he did that and I don’t remember what he said. Everybody else was close when he said this and I think they heard him also. We then just all get back into the car and leave. We then went to Santo’s friends house. On the way ever[y]body was quiet and was not talking about what happened. San-to’s friends house is on S. Flores street somewhere but I’m not sure where. When we get to the house Santos tells us to just be quiet about what had happened. I was just in shock about what had happened and didn’t say anything. The house is gang house and there was alot of guys and girls there just hanging out. We just drank beer and hung out. We stayed there to about 3:00 in the morning and then [Bryan] took me [Juan] and Carlos back to Carlos’s house. [Bryan] and Santos then left they didn’t say where they were going. I don’t know Santos last name but I have agreed to take you to the house that we picked him up at. This guy named [Bryan] is a friend of [Juan] I don’t know his last name or where he lives.
I have read the above statement and It’s true and correct.
Also attached to Trevino’s federal habe-as petition are affidavits from Trevino’s two trial attorneys in which they swore that they had never seen this written statement by Rey before Trevino’s trial. One of the attorneys swore that Rey’s statement “was never produced or shown to us” before Trevino’s trial; and the other attorney swore, “I do not recall seeing ... the June 12, 1996 statement of Seanido Rey prior to 2006, and certainly never saw [it] prior to trial in June 1997.”
The habeas record in this case also includes a report by Det. Gresham, dated a little more than a month after the crime. The report details Det. Gresham’s investigation of Salinas’ murder, and includes a summary of three purported statements by Rey. Det. Gresham’s summary of Rey’s purported first statement says that Rey “read the statement he had given me and signed it,” indicating that a separate written statement existed. The summary of Rey’s purported second statement provides a brief recapitulation of the sworn, written statement reproduced above, but *434 does not include the rich detail of Rey’s written statement. For instance, Det. Gresham’s summary leaves out critical facts, such as Rey’s statement that “[o]n the way [to Santos’ friend’s house] ever[y]body was quiet and was not talking about what happened,” which contradicts Gonzales’ testimony that Trevino had made incriminating statements during that car ride. There is also nothing in Det. Gresham’s report that suggests that Rey swore to, and signed a separate, full written statement — as opposed to simply giving Det. Gresham an oral statement. Det. Gresham’s summary of Rey’s purported third statement contradicts parts of Rey’s second statement and includes inculpatory allegations against Trevino. As with Det. Gresham’s summary of Rey’s purported second statement, the summary of Rey’s purported third statement in no way indicates that a separate, written statement existed. Attached to Trevino’s federal ha-beas petition are affidavits from Trevino’s trial attorneys in which they swore that they could not remember having seen Det. Gresham’s report before Trevino’s trial.
Trevino raised two claims for habeas relief based on Rey’s second written statement: (1) The state’s failure to disclose this statement violated Brady; and, (2) if the state did not in fact suppress this statement, Trevino’s trial counsel’s failure to uncover it and utilize it violated Trevino’s right to the effective assistance of counsel under Strickland. These two contentions share an overlapping element: materiality of the evidence. See Brady, 373 U.S. at 87, 83 S.Ct. 1194 (suppressed evidence must be “material”); Strickland, 466 U.S. at 694, 104 S.Ct. 2052 (explaining that a claim of ineffective assistance of counsel requires a showing of “prejudice,” and that “the appropriate test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution”); see also Youngblood v. West Virginia, 547 U.S. 867, 869-70, 126 S.Ct. 2188, 165 L.Ed.2d 269 (2006). In United States v. Bagley, the Supreme Court expressly adopted “the Strickland formulation of the ... test for materiality” for Brady claims. 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (opinion of Blackmun, J.); see Cone v. Bell, 556 U.S. 449, 129 S.Ct. 1769, 1783, 173 L.Ed.2d 701 (2009). Therefore, Trevino must make the same showing of the materiality of Rey’s second statement for his Brady claim and for his Strickland claim. That is, Trevino must show that Rey’s statement “could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.” Kyles v. Whitley, 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).
The district court concluded that Trevino failed to show that Rey’s statement was material and therefore denied habeas relief for both phases of Trevino’s trial without reaching the other component of either the Brady or Strickland claims — whether the statement was suppressed under Brady or whether Trevino’s trial counsel’s performance was objectively unreasonable under Strickland. Therefore, the only issue before us on Trevino’s Brady and Strickland claims is whether Rey’s statement is material.
After this appeal was fully briefed, the majority, sua sponte, requested the state court record for Rey’s murder conviction. That record contains three written statements by Rey, the second of which forms the basis of Trevino’s claims in this case, and is the only written statement by Rey that was introduced into the habeas record before the district court. The other two statements do not appear in the district court record in this case and have never been addressed or litigated by the parties. Nonetheless, the majority now reasons *435 that it can take judicial notice of Rey’s third (June 13th) statement, and give credit to it in lieu of Rey’s second (June 12th) statement. In my view, that course is not supported by precedent or authority.
II.
To conclude that Rey’s second statement is not material, the majority takes judicial notice of a third written statement by Rey, which the majority has produced sua sponte from a state court record for a different case to which Trevino was not a party. The majority reasons that “[i]f Trevino’s lawyers had been successful in introducing Rey’s second statement” to question Trevino’s guilt, then “the prosecution undoubtedly would have introduced Rey’s third statement” to undermine that defense; and, likewise, that if “Rey had attempted to testify at Trevino’s trial to the facts contained in his second statement, the prosecution would have undoubtedly impeached Rey with his third statement to the police.” Majority Op. 424. The majority’s reliance on Rey’s third statement is a significant error because (A) the parties have never had an opportunity to litigate the significance or veracity of that statement; (B) the credibility determinations that the majority draws from that statement are not the proper subject of judicial notice; and (C) even assuming arguendo that we could take judicial notice of Rey’s third statement, it would not necessarily prevent the defense counsel in a hypothetical retrial from effectively using Rey’s second statement as tending to exculpate Trevino and challenge the credibility of the state’s witnesses against him in the guilt and penalty phases of his capital murder trial.
A.
The majority sua sponte produced Rey’s third written statement, without any request or agreement by the parties, from a state court record of a different case to which Trevino was not a party. It was not part of the record before the district court, as the majority acknowledges, Majority Op. 421 n. 3, nor was it ever once mentioned by the parties below or on appeal. For all we know, neither Trevino nor the state’s attorneys in Trevino’s criminal trial nor in his habeas proceedings has even seen or been informed of this statement. It certainly stands to reason that if the state’s attorneys in Trevino’s case had been aware of this statement, as the majority’s argument presupposes, then they would have relied upon it in responding to Trevino’s habeas petition; but they did not. As such, the parties have never litigated the admissibility or relevance of that statement to Trevino’s Brady and Strickland claims.
B.
The majority contends that we can sua sponte take judicial notice of the statement. Majority Op. 421 n. 3. However, that is not allowed by Federal Rule of Evidence 201, which governs judicial notice in the district courts as well as in the courts of appeals. See Fed.R.Evid. 201(f) (“Judicial notice may be taken at any stage of the proceeding.”); see also 21B Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5110.1, at 299 (2d ed. 2005) (“Rule 201(f) does not distinguish between taking judicial notice on appeal and appellate review of the trial court judicial notice.... [It] places the appellate court under the same limitations as the trial judge whether the appellate court is reviewing trial court notice or noticing facts for the first time.”); 1 Jack B. Weinstein, Weinstein’s Federal Evidence § 201.32 (2011) (“Because Rule 201 authorizes the taking of judicial notice ‘at any stage of the proceeding,’ judicial notice *436 may be taken by an appellate court.... However, appellate courts are still subject to the limitations imposed by Rule 201 on the types of facts that may be judicially noticed and the procedures for noticing them.”).
Rule 201 provides, in relevant part:
(a) Scope of rule. This rule governs only judicial notice of adjudicative facts.
(b) Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
(c) When discretionary. A court may take judicial notice, whether requested or not.
(d) When mandatory. A court shall take judicial notice if requested by a party and supplied with the necessary information.
(e) Opportunity to be heard. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the ten- or of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.
(f) Time of taking notice. Judicial notice may be taken at any stage of the proceeding.
The majority’s taking judicial notice of Rey’s third written statement in order to conclude that it retracts and makes immaterial Rey’s second statement, is not authorized by law; it judicially notices a kind of adjudicative fact that courts may not take notice of under Federal Rule of Evidence 201. The majority’s contention is that the prosecutors would have used Rey’s third statement to undermine any beneficial use defense counsel could have made of Rey’s second written statement, and thus, that the second statement is immaterial. To reach this conclusion requires the majority to take notice of the following facts: that Rey made a third written statement; that he made it before Trevino’s trial; that the prosecutors in Trevino’s case were aware of the existence of that written statement at the time of Trevino’s trial; that the prosecutors in Trevino’s trial would have used that statement if defense counsel had called Rey as a witness or used his second written statement to attack the state’s case; and that the jury would have given credit to Rey’s third written statement in lieu of his second written statement.
However, these facts are “subject to reasonable dispute” and are not “capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.” Therefore, they are not the “kinds of facts” of which Rule 201 allows a court to take judicial notice. Based on the record before the district court, supplemented by the record from Rey’s state court criminal proceeding, we cannot properly know or judicially notice whether the state’s attorneys in Trevino’s criminal trial were aware of Rey’s third statement. (The prosecutor in Rey’s case was not the same as in Trevino’s case.) It is not at all certain that the state’s attorneys would have known of or resorted to using Rey’s third statement at trial, because they did not use it or even mention it in Trevino’s federal habeas proceedings. Moreover, the majority’s argument rests on an improper determination of the relative truthfulness of one statement by Rey vis-á-vis another by him. However, the truth of a statement is not a proper matter for judicial notice. See Wright & Graham, supra, § 5106.4, at 281-36 (“It seems clear that a court cannot notice pleadings or testimony [in court records] as true simply *437 because these statements are filed with the court.... [A] court cannot take judicial notice of the truth of a document simply because someone put it in the court’s files.... [Courts] can notice [that an] assertion was made, but not that it was true....”).
The majority’s sua sponte course of taking judicial notice here also conflicts with Rule 201’s requirement that the parties be heard on the court’s taking judicial notice, and it will not prevent another round of litigation regarding Rey’s third statement. Instead, as the majority concedes, see Majority Op. 421 n. 3, it will put the parties in the untenable position of litigating an issue of fact in a petition for rehearing in an appellate court.[7] Rule 201 entitles the parties “upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed.” Fed.R.Evid. 201(e); see also id. advisory committee note (1972) (“Basic considerations of procedural fairness demand an opportunity to be heard on the propriety of taking judicial notice and the tenor of the matter noticed.”). This rule applies in the appellate courts as much as it does in the district courts. See Wright & Graham, supra, § 5110.1, at 299-300 (“[T]he appellate court must follow the procedures in Rule 201(e) in giving the parties an opportunity to be heard.”); Weinstein, supra (“[A]ppellate courts are still subject to the limitations imposed by Rule 201 on the types of facts that may be judicially noticed and the procedures for noticing them.... An appellate court contemplating original judicial notice should notify the parties so that the propriety of taking notice and the tenor of the matter to be noticed can be argued. If oral argument has already been completed, the court should, at a minimum, afford the parties an opportunity to submit supplemental briefs.” (footnote omitted) (quoting Massachusetts v. Westcott, 431 U.S. 322, 323 n. 2, 97 S.Ct. 1755, 52 L.Ed.2d 349 (1977), as saying, “The parties were given an opportunity to comment on the propriety of our taking notice of the license, and both sides agreed that we could properly do so.”)). Rule 201 also provides that “[i]n the absence of prior notification, the request may be made after judicial notice has been taken.” Fed.R.Evid. 201(e). The majority has not given the parties an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed, and therefore, they will be forced to litigate this issue for the first time in a petition for rehearing.
Finally, the majority’s only supporting authorities for taking judicial notice of Rey’s third statement are inapposite. The majority cites Brown v. Lippard, 350 Fed.Appx. 879 (5th Cir.2009) (unpublished), but Brown is nothing like this case. There, we took judicial notice merely of a “docket entry establishing the existence of the 2001 transcript” of a court proceeding. Id. at 882 n. 2. Here, the majority takes judicial notice of facts that are subject to reasonable dispute, and are not analogous to the fact that a court docket entry exists. Nor is the majority’s reliance on Moore v. Estelle, 526 F.2d 690 (5th Cir.1976), any more persuasive. There, we said quite plainly that we will “take judicial notice of prior habeas proceedings brought by this *438 appellant in connection with the same conviction.” Id. at 694 (emphasis added). Of course, Sam Rey’s state court criminal proceedings are not “prior habeas proceedings brought by [Carlos Trevino] in connection with [Trevino’s] conviction.” Id. Indeed, the majority concedes this point when it describes “our routine practice in habeas appeals” as “taking judicial notice of all related proceedings brought by the appellant, including state proceedings, even when the prior state case is not made a part of the record on appeal.” Majority Op. 421 n. 3 (emphasis added) (internal quotation marks omitted). Therefore, the majority has provided no relevant authority for its sua sponte decision to take judicial notice of facts outside of the record on appeal in this case and contained in a record in a state court proceeding for a different case of a different defendant.
C.
Assuming arguendo that the majority lawfully could take judicial notice of Rey’s third statement, the existence of that statement does not prevent defense counsel from arguing that the state’s suppression of Rey’s second written statement casts a different light on Trevino’s capital murder trials so as to undermine confidence in those proceedings. Rey’s third written statement shows that Rey was not even present when Salinas was killed and, therefore, could not credibly say who stabbed Salinas. • Nor it does it contradict the portion of Rey’s second statement in which he said that nobody, including Trevino, said anything in the car following Salinas’ murder. See Majority Op. 419- 20 (quoting Rey’s third written statement). Therefore, Rey’s second statement would stand unchallenged in contradicting the critical aspect of Gonzales’ testimony that in the car after Salinas’ murder, Cervantes said it was “cool” or “neat” how Trevino had “snapped” Salinas’ neck, and that Trevino responded that he had “learned how to kill in prison.”
III.
For these reasons, the fair and proper course would be for the majority to vacate the judgment and remand this case to the district court to consider all of Rey’s statements and any additional evidence relevant thereto, and to determine whether all of that evidence undermines confidence in Trevino’s capital murder guilt and penalty trials. It is clear that on the record before the district court, Rey’s second statement is material — otherwise, the majority would not have found it necessary to commit serious legal error by sua sponte going outside of the district court’s record to take notice of facts not judicially noticeable under Federal Rule of Evidence 201 in order to reach the contrary conclusion. Moreover, as I explain infra in Part IV.A, Trevino’s trial attorneys could have put Rey’s second statement to good use to cast doubt on his guilt, and the record before us is insufficiently developed for us to decide whether Rey’s third statement actually would have eviscerated defense counsel’s every use of Rey’s second statement in Trevino’s guilt and death penalty trials. Therefore, in my view, it is necessary to remand this case because now that Rey’s third statement has been produced, the parties should be allowed an opportunity to litigate the significance of that statement, specifically, whether it undermines the materiality of Rey’s second statement, and the district court should reconsider this case in light of those arguments and all of the available relevant evidence.
When the Eleventh Circuit was confronted with a similar situation — i.e., whether to consider extrarecord evidence that may have been significant in resolving the habeas petitioner’s claim — that court *439 remanded to the district court to first find the necessary facts. See Ross v. Kemp, 785 F.2d 1467, 1477 (11th Cir.1986). In contrast, the majority simply assumes the facts that it thinks the district court would have found after a full and fair hearing, providing no authority for its course of action, and plainly stepping beyond the bounds of its limited authority to judicially notice certain kinds of facts under Federal Rule of Evidence 201. The majority’s course is unfair for the resolution of a highly controversial issue based on uncertain evidence from murky and questionable, self-interested recollections of death penalty defendants. I would instead follow the course taken by the Eleventh Circuit and remand this case to the district court to allow the parties to litigate the issues given rise to by the state’s apparent suppression of Rey’s second and third statements.
IV.
In concluding that Rey’s second statement was not material the majority also errs, in my view, by (A) reasoning that Rey’s second statement “would likely have been inadmissible,” and ignoring the substantial use that Trevino’s trial attorneys could have made of that statement even without admitting it into evidence; (B) purporting to make a factual finding that the state did not suppress Rey’s statement, a finding which is the subject of a factual dispute that the district court expressly left unresolved; (C) concluding that Rey’s statement was not material because “the evidence presented at Trevino’s trial supports the jury’s verdict of conviction under Texas’s law of the parties.” Majority Op. 425.
A.
The majority mistakenly asserts that “Rey’s [second] written statement would likely have been inadmissible.” Majority Op. 424 n. 7. This is perplexing considering that the majority expressly acknowledges that “inadmissible evidence may be material under Brady.” Spence v. Johnson, 80 F.3d 989, 1005 n. 14 (5th Cir.1996) (citing Sellers v. Estelle, 651 F.2d 1074, 1077 n. 6 (5th Cir.1981)); see Majority Op. 424 n. 7 (citing Felder v. Johnson, 180 F.3d 206, 212 (5th Cir.1999)). Indeed, this court has often “reaffirm[ed] that ‘inadmissible evidence may be material under Brady.’ Thus, we ask only the general question whether the disclosure of the evidence would have created a reasonable probability that the result of the proceeding would have been different.” Felder, 180 F.3d at 212 (citations omitted) (quoting Spence, 80 F.3d at 1005 n. 14); see also United States v. Brown, 650 F.3d 581, 588 & n. 12 (5th Cir.2011) (“The suppressed evidence need not be admissible to be material under Brady; but it must, somehow, create a reasonable probability that the result of the proceeding would be different.” (citing Felder, 180 F.3d at 212)); Spence, 80 F.3d at 998, 1005 n. 14 (same); Sellers, 651 F.2d at 1077 n. 6 (same); Martinez v. Wainwright, 621 F.2d 184, 188 (5th Cir.1980) (holding that evidence was material even if it “were held to be hearsay and not admissible” because “it at least would have provided the defense the ability to contact the appropriate” people to gather the evidence in admissible form). Moreover, in Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), the majority of the Supreme Court squarely rejected Justice Scalia’s dissenting view that because undiscovered mitigation evidence was likely inadmissible under state law during the punishment phase of a capital murder trial, it was not material under Strickland. See 539 U.S. at 536, 123 S.Ct. 2527; id. at 554-57, 123 S.Ct. 2527 (Scalia, J., dissenting). Writing for seven members of the Court, Justice O’Connor explained, “had *440 the jury been confronted with this considerable mitigating evidence, there is a reasonable probability that it would have returned with a different sentence. In reaching this conclusion [ ]” — that the evidence was material under Strickland — “we need not, as the dissent suggests, make the state-law evidentiary findings that would have been at issue at sentencing.’' Id. at 536, 123 S.Ct. 2527 (majority opinion) (emphasis added) (citation omitted).
In Sellers, under extremely similar circumstances as this case, we also rejected the contention that evidence must be admissible to be material under the Brady-Stnckland standard. 651 F.2d at 1077 n. 6. There, the suppressed police reports included a written statement of a friend of Santos Cantera, which alleged that Cant-era had told him that Cantera was the actual killer. Id. at 1075-77. The lower court held that the evidence was immaterial in part because this statement was inadmissible. Id. at 1076, 1077 n. 6. We held that “[sjuch a conclusion [was] unwarranted,” and explained why the written statement of Cantera’s friend, although apparently inadmissible, was still material: “First, by enabling the defense to examine [the suppressed evidence], Sellers may have been able to produce witnesses whose testimony or written statements may have been admissible. Martinez v. Wainwright, 621 F.2d 184 (5th Cir.1980). Second, the evidence ... suppressed was material to the preparation of [Sellers] defense, regardless of whether it was intended to be admitted into evidence or not.” Sellers, 651 F.2d at 1077 n. 6; see also Spence, 80 F.3d at 998 (“The district court concluded that the undisclosed evidence was not material because under Texas law it would not have been admissible at trial. The Fifth Circuit has expressly found otherwise in Sellers v. Estelle,” 651 F.2d 1074 (5th Cir.1981).).
For substantially similar reasons, Rey’s second statement would have been extremely useful to Trevino’s trial attorneys regardless of whether it was admissible. First, Rey’s second statement may have led Trevino’s counsel to call Rey to testify in contradiction to Gonzales’ testimony, particularly his testimony about the statements Trevino allegedly made in the car after Salinas was killed. See Kyles, 514 U.S. at 445-46, 115 S.Ct. 1555 (discussing the possibility of defense counsel calling “as an adverse witness” an alternative suspect whose statements had been suppressed); Sellers, 651 F.2d at 1077 n. 6; Martinez, 621 F.2d at 188 (“If the [suppressed] rap sheet were held to be hearsay and not admissible to prove the [state’s witness’s] prior convictions, it at least would have provided the defense the ability to contact the appropriate penal facilities to acquire an official record which would have been admissible.”). This, in fact, is exactly what Trevino’s trial counsel swore that he would have done with Rey’s written statement: “I would have definitely used it ... to further discredit Juan Gonzales.... ” Thus, the majority is simply mistaken that “[n]othing in the record remotely suggests that disclosure of the full text of Rey’s second statement would have changed th[e] strategic calculation made by Trevino’s attorneys.” Majority Op. 426. The majority’s only reason for why this does not make Rey’s second statement material is based on its mistaken reliance on Rey’s third statement.[8]
*441 Second, Rey’s second statement was important to the preparation of Trevino’s defense, regardless of whether it was intended to be admitted into evidence or not. See Sellers, 651 F.2d at 1077 n. 6. As the Court explained in Kyles, competent counsel “could have examined [Det. Gresham] to good effect on [his] knowledge of [Rey’s out-of-court] statement] and so have attacked the reliability of the investigation.” 514 U.S. at 446, 115 S.Ct. 1555.[9] That is, competent counsel could have used Rey’s second statement to cast particular aspersion on Cervantes as the only person culpable for Salinas’ murder, and to show that Det. Gresham’s investigation focused on Trevino, despite Rey’s statement exculpating Trevino; and that Det. Gresham never pursued a more rigorous investigation of Cervantes, despite Rey’s statement that inculpated only Cervantes. Again, Trevino’s trial counsel swore he would have used Rey’s statement for this exact purpose, “in the cross-examination of [Detective Gresham to show the jury that Santos Cervantes and not ... Trevino[ ] stabbed and killed [Salinas]”; which again contradicts the majority’s assertion that “[n]oth-ing in the record remotely suggests that disclosure of the full text of Rey’s second statement would have changed th[e] strategic calculation made by Trevino’s attorneys.” Majority Op. 426. The majority does not address the impact that undermining the investigation would have had on the jury’s assessment of the evidence.
“In any event, contrary to the [majority’s] assertion, it appears that [Rey’s second statement] may have been admissible under [Texas] law.” Wiggins, 539 U.S. at 536, 123 S.Ct. 2527. If Det. Gresham had used Rey’s second statement to refresh his memory before testifying at Trevino’s trial then Trevino would have been “entitled ... to introduce in evidence those portions which relate to the testimony of the witness.” Tex.R. Evid. 612. Of course, Trevino’s attorneys were unable to ask Det. Gresham whether he had used Rey’s second written statement to refresh his memory because they were unaware of its existence. Therefore, the majority is mistaken that Rey’s second statement was inadmissible.
B.
The majority also mistakenly contends that “the record evidence strongly indicates that the prosecution did not suppress [Rey’s second] statement.” Majority Op. 424. However, as the majority admits, whether the state suppressed the statement turns on a factual dispute that the district court did not resolve. Majority Op. 424 n. 6.[10] Also, the majority fails to *442 appreciate that in addition to a Brady claim, Trevino has raised a Strickland claim based on Rey’s second statement, viz., if the statement was not suppressed, then his attorneys were constitutionally ineffective in failing to discover the statement. Therefore, even if Rey’s second statement was not suppressed, there still exists another unresolved factual question of whether Trevino’s attorneys’ failure to discover the statement rendered their performance constitutionally deficient.
Moreover, in resolving this factual dispute, the majority seriously errs in its assessment of the evidence regarding the state’s suppression of Rey’s second statement: (1) The majority ignores the record evidence that Trevino’s trial attorneys swore in affidavits that Rey’s second statement “was never produced or shown to us” before Trevino’s trial, and that, “I ... certainly never saw [Rey’s statement] pri- or to trial in June 1997.” (2) The majority is mistaken that Det. Gresham’s report “should have put defense counsel on notice that Rey had made [a] statement to police to police suggesting that Cervantes stabbed the victim” and that “[t]he onus was then on Trevino’s lawyers to request a copy of the full statement.” Majority Op. 424. Nothing in Det. Gresham’s report suggests that there was a separate, written and signed statement by Rey exculpating Trevino. If anything, Det. Gresham’s report suggests just the opposite: Det. Gresham’s report includes a summary of Rey’s first statement, and notes that Rey “signed the statement.” (R. at 885). However, there is no such indication in the report that Rey signed his second statement, the statement that is at the heart of this appeal. Nothing in Det. Gresham’s report should have alerted Trevino’s attorney to the existence of a second, written statement. (3) The state does not even contend that it disclosed Rey’s second statement. See Resp’t Br. 26 (Rey’s second “statement itself may not have been in the State’s file....”). In sum, if anything, the record evidence indicates that the prosecution suppressed Rey’s second statement.
C.
Finally, the majority errs by concluding that Rey’s second statement was not material because “the evidence presented at Trevino’s trial supports the jury’s verdict of conviction under Texas’s law of the parties.” Majority Op. 425.[11] The majority reasons that “Rey’s written statements cast no doubt on the substantial, uncontro-verted evidence presented during the guilt/innocence phase of the trial supporting the conclusion that Trevino acted with intent to commit the offense and aided or attempted to aid other members of the group in commission of Salinas’s murder.” Majority Op. 425. This is clearly incorrect. Rey’s second statement fully exculpates Trevino of any involvement in the rape and murder of Salinas, and thus absolves Trevino of criminal responsibility for her killing, even under Texas’ law of the parties. Moreover, Rey’s second statement casts doubt on Gonzales’ crucial testimony that Trevino made incriminating *443 statements after Salinas’ murder, which would have been significant for the jury’s determination of whether Trevino was guilty under Texas’ law of the parties, that is, whether he “intended to kill [Salinas] or anticipated that a human life would be taken.”
This case is distinguishable from Miller v. Dretke, 404 F.3d 908 (5th Cir.2005), another case charged under Texas’ law of the parties cited by the majority. Majority Op. 425. In Miller, there was “uncon-troverted, overwhelming evidence of [the defendant’s] involvement in th[e] conspiracy [to commit a robbery] and the nature of the robbery” and the alleged Brady evidence merely suggested that the other participant in the robbery, and not the defendant, actually shot the victims. 404 F.3d at 916. Here, by contrast, there was disputed and weak circumstantial evidence that Trevino participated in the assault on Salinas, and the Brady evidence indicates that Trevino did not participate in any aspect of the crime, not just that someone other than Trevino committed the murder. Therefore, even under Texas’ law of the parties, Rey’s second statement would have been critical to defense counsel to cast doubt on Trevino’s culpability.
V.
In my view, the majority has fallen into error by taking judicial notice of Rey’s third statement and unproven facts related to that statement; and improperly assessing the credibility and weight of those statements, without their surrounding facts and circumstances, and other evidence in this case, in order to render judgment in favor of the state. Now that Rey’s third statement has been produced, I would remand this case to the district court to allow the parties an opportunity to litigate the significance of that statement, and consider all of Rey’s statements and additional evidence relevant thereto to determine whether all of that evidence undermines confidence in Trevino’s capital murder trials. For these reasons, I respectfully dissent.

. See State v. Rey, No. 97-CR-1717C (290th Dist. Ct., Bexar Cnty., Tex. Mar. 25, 1998) (criminal docket sheet entry); see also Tex. Pen.Code § 19.02.

. See State v. Cervantes, No. 97-CR-1717B (290th Dist. Ct., Bexar Cnty., Tex. May 5, 1998) (criminal docket sheet entry); see also Texas Pen.Code § 12.31 ("An individual adjudged guilty of a capital felony in a case in which the state does not seek the death penalty shall be punished by imprisonment in the Texas Department of Criminal Justice for ... life without parole.”).

. See Apolinar v. State, No. 04-99-00644-CR, 2000 WL 1210922 (Tex.Crim.App. Aug. 16, 2000) (unpublished); see also Tex. Pen.Code § 19.03.

. The statement is quoted as it appears in the record, including any orthographic irregularities.

. Rey referred to the owner of the car as "Jason” in his first statement to Det. Gresham and in this statement. In a later statement he "stated [that] he had been confused about the name of the driver of the car and remembered now the driver's name is Bryan not Jason.” In order to avoid confusion, I have changed "Jason” in Rey’s quoted statement to "[Bryan].”

. In several of the suspects’ statements, Juan Gonzales was referred to as "Thatie” or "Tati.” See Trevino v. Thaler, 678 F.Supp.2d 445, 460 (W.D.Tex.2009). Again, to avoid confusion, I have changed "Thatie” in Rey’s quoted statement to "[Juan]."

. The majority offers the following placebo: "[W]e afford [Trevino] the right to raise any objections he may have by means of a petition for rehearing, which objections we will consider filed before our opinion issued.” Majority Op. 421 n. 3. I fail to understand what effect this has as Trevino unquestionably has the right to raise "each point of law or fact that [he] believes the court has overlooked or misapprehended” in a petition for rehearing. Fed. R.App. P. 40. This does not alleviate, however, the problem of litigating a fact issue for the first time in a petition for rehearing in an appellate court.

. The majority concludes that "[i]n the extremely unlikely event that Rey had attempted to testify at Trevino's trial to the facts contained in his second statement, the prosecution would have undoubtedly impeached Rey with his third statement,” Majority Op. 424; by which the majority seems to mean that in their view, the jury would have certainly believed the contents of Rey’s third statement and not his live testimony to the contrary. *441 However, as I explained in Part II.B, this credibility determination is based on taking judicial notice of Rey’s third statement, and such a credibility determination is not a kind of fact that may be judicially noticed. See Fed.R.Evid. 201(b) (Providing for judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

. There would be no hearsay problem in using Rey’s statement to attack the credibility of Det. Gresham’s investigation since " ‘[h]ear-say’ is a statement ... offered in evidence to prove the truth of the matter asserted.” Tex.R. Evid. 801(d). Rey’s statement would not have been offered into evidence, and it would not have been used to prove the truth of the matter asserted in the statement, but to show that Det. Gresham's investigation was unreliable because it was not thorough, impartial and objective.

. See Trevino, 678 F.Supp.2d at 459-60 ("There are many unresolved factual disputes before this Court concerning precisely what documentation was made available to [Trevino's] trial counsel by the prosecution before and during [Trevino’s] capital murder trial. *442 More specifically, there appears to be a genuine issue of material fact regarding whether ... Rey’s statement, which indicated Cervantes admitted to Rey that he stabbed Salinas, was ever made available to [Trevino’s] trial counsel. It is unnecessary to resolve these disputes because, having reviewed the evidence from both phases of [Trevino's] trial, this Court concludes Rey’s statement does not satisfy the ‘materiality’ prong for purposes of Brady analysis.”); see also id. at 466-67 (addressing only the prejudice prong of Trevino’s Strickland claim).

. Texas’ law of the parties doctrine is codified in Texas Penal Code § 7.02.